# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.

Reporter of Decisions:
Corbin R. Davis

## PEOPLE v BYNUM

Docket No. 147261. Argued April 2, 2014 (Calendar No. 3). Decided July 11, 2014.

Levon L. Bynum was charged in the Calhoun Circuit Court with first-degree murder, two counts of assault with intent to murder, carrying a concealed weapon, and felony-firearm following a shooting that had occurred outside a party store in Battle Creek. Bynum and some of the others present were alleged to be members of the Boardman Boys gang, whose territory (or "turf") bordered the party store. Bynum claimed that he acted in self-defense. Tyler Sutherland, an officer in the Battle Creek Police Department's Gang Suppression Unit, was proffered at trial as an expert witness on gangs, gang membership, and gang culture with a particular expertise about Battle Creek gangs. He had also prepared a PowerPoint presentation about gangs and gang culture that connected Bynum to the Boardman Boys and showed how Battle Creek gangs appropriated symbolism from nationally organized gangs. Defense counsel offered general objections to the testimony. The court, Conrad J. Sindt, J., allowed Sutherland's testimony and PowerPoint presentation, concluding that the evidence was relevant to prove Bynum's motive for shooting the victims. Defense counsel did not specifically object to any of this testimony after the initial, general objection to Sutherland's testimony, and the jury found Bynum guilty as charged. Bynum's appellate defense counsel subsequently moved for a new trial, arguing the ineffective assistance of trial counsel for failing to object to Sutherland's testimony as improper propensity evidence. The court rejected the ineffective-assistance claim because it was satisfied that trial counsel's objections had preserved the claimed error in Sutherland's testimony. The court also held that the expert witness testimony was appropriate. Bynum appealed. The Court of Appeals, BORRELLO, P.J., and M. J. KELLY, J. (BOONSTRA, J., dissenting), reversed Bynum's convictions in an unpublished opinion per curiam, issued April 18, 2013 (Docket No. 307028). The Supreme Court granted the prosecution's application for leave to appeal. 495 Mich 891 (2013).

In an opinion by Justice KELLY, joined by Justices CAVANAGH, MARKMAN, ZAHRA, MCCORMACK, and VIVIANO, the Supreme Court *held*:

If the prosecution presents evidence to show that the crime at issue was gang-related, expert testimony about gangs, gang membership, and gang culture may be admitted as relevant under MRE 402 and of assistance to the trier of fact to understand the evidence or determine a fact in issue under MRE 702. The prosecution may use an expert to identify the significance of certain evidence such as symbols, clothing, or tattoos that by itself would not be understood by the average juror to be connected with gangs or gang-related violence. MRE 404(a), however,

precludes testimony that is specifically used to show that on a particular occasion, a gang member acted in conformity with character traits commonly associated with gang members.

1. With regard to the admission of expert witness testimony, MRE 702 requires the trial court to determine that the expert testimony will assist the trier of fact to understand the evidence or determine a fact in issue. If the average juror does not need that aid, the proffered testimony is inadmissible because it merely deals with a proposition that is not beyond the ken of common knowledge. In addition, MRE 402 provides that evidence that is not relevant is inadmissible. Finally, MRE 404(a) provides that evidence of a person's character or character traits is not admissible to prove action in conformity with that character or those traits on a particular occasion.

2. MRE 402 and MRE 702 require a trial court to act as a gatekeeper of gang-related expert testimony and determine whether that testimony is relevant and will assist the trier of fact to understand the evidence. Evidence regarding a defendant's gang membership is relevant and can assist the trier of fact when there is factual evidence that the crime at issue is gang-related. Expert testimony about gang membership is ordinarily of little value to a fact-finder unless there is a connection between gang membership and the crime at issue. Identifying whether a crime is gang-related, however, might require an expert to establish the significance of seemingly innocuous matters (such as clothing, symbolism, and tattoos) as features of gang membership and gang involvement. Expert testimony that the crime was committed in rival gang territory might also be necessary to show why the defendant's presence in that area was motivated by his gang affiliation. That is, understanding the connection between the crime and gang activity is sometimes beyond the ken of common knowledge, and the relevance of gang-related expert testimony might be established by factual evidence that at first glance does not indicate gang motivations, but provides the gang-crime connection when coupled with expert testimony. In the context of gang-related violence, expert testimony regarding general characteristics of gang culture may be admitted for an appropriate purpose, such as helping to elucidate a gang member's motive for committing a gang-related crime. The testimony must otherwise meet the rules of evidence before it can be admitted, however, and MRE 404(a) limits the extent to which a witness may opine about a defendant's gang membership. An expert may not testify that on a particular occasion a gang member acted in conformity with character traits commonly associated with gang members because that testimony would attempt to prove a defendant's conduct simply because he or she is a gang member.

3. Sutherland testified that the shootings occurred on disputed gang territory and connected Bynum and the other shooters to the Boardman Boys. The location of the crimes, when combined with evidence that multiple gang members were involved in the crimes, provided sufficient factual evidence to conclude that expert testimony regarding gangs, gang membership, and gang culture would be relevant and helpful to the jury in this case.

4. The prosecution argued that Sutherland's testimony was proper evidence of motive. Even if expert testimony about gang culture may be introduced, however, MRE 404(a) precludes the expert from providing evidence of a gang member's character to prove action in conformity with gang membership. A gang expert may testify that a gang protects its turf through violence as an explanation of why a gang member might be willing to commit apparent random acts of

violence against people whom the gang member believes pose a threat to that turf. Sutherland did so in discussing aspects of gang culture generally, and that testimony was proper under MRE 404(a). Sutherland also opined, however, that Bynum acted in conformity with his gang membership with regard to the specific crimes in question. In particular, Sutherland used Bynum's gang membership and the character traits associated with that membership to describe what he saw on a surveillance video that recorded the incident. In so doing, his testimony suggested Bynum's guilt in the underlying crime. In contrast to his otherwise admissible general testimony about aspects of gang culture, Sutherland exceeded the limitations of expert testimony when he opined that he believed that Bynum and others went to the party store waiting for someone to give the Boardman Boys the chance to protect their turf. That testimony was an opinion that Bynum acted in conformity with the character traits commonly associated with gang members on a particular occasion, in violation of MRE 404(a).

5. Although there was overwhelming evidence that Bynum participated in the shooting that led to the victim's death and his self-defense theory was not particularly persuasive, the evidence of Bynum's premeditation was not overwhelming. As a result, it is likely that, had the jury not heard the propensity evidence or been told by an expert that Bynum and his friends went to the store with the intent to shoot someone, it would have found that the prosecution had not proved beyond a reasonable doubt that Bynum premeditated. Moreover, Sutherland's testimony further weakened Bynum's self-defense claim by suggesting that Bynum's propensity for violence meant that he intended to shoot someone at the party store on the night of the shooting. The error seriously affected the fairness, integrity, or public reputation of judicial proceedings because it inevitably led the jury to find on the basis of his membership in a gang and the asserted character trait that he was therefore prone to violence that Bynum premeditated the murder. Therefore, Bynum is entitled to relief.

6. The prosecution argued that any evidentiary error would not have affected the jury's rejection of Bynum's self-defense claim, only its finding of premeditation, and entry of a guilty verdict on the lesser included offense of second-degree murder, which does not require a finding of premeditation, was appropriate as relief in this case. The prejudice regarding premeditation could not be easily separated from the prejudice regarding self-defense in light of the evidence presented, however, and Bynum was entitled to a new trial.

Result of the Court of Appeals' judgment affirmed and case remanded.

Chief Justice YOUNG, dissenting, agreed that Sutherland's testimony was generally admissible, that his specific statement opining on the issue of Bynum's premeditation was inadmissible, and that the prejudice resulting from the impermissible statement regarding Bynum's state of mind warranted relief with respect to his first first-degree-murder conviction. He disagreed, however, that the prejudice resulting from the improper testimony was inseparable from Bynum's unpersuasive claim of self-defense. Notwithstanding Sutherland's inadmissible premeditation testimony, Bynum's self-defense claim would have failed anyway because any belief on his part that deadly force was necessary was objectively unreasonable in light of the other evidence presented. Accordingly, Chief Justice YOUNG disagreed that defendant was entitled to a new trial and would instead have remanded the case for entry of a conviction on the lesser included offense of second-degree murder.

©2014 State of Michigan

# Opinion

Chief Justice:    Justices:

Robert P. Young, Jr.    Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

FILED July 11, 2014

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant/Cross-
Appellee,

v    No. 147261

LEVON LEE BYNUM,

Defendant-Appellee/Cross-
Appellant.

BEFORE THE ENTIRE BENCH

KELLY, J.

Gang-related violence pervades our country, including Michigan, and is not likely to abate anytime soon.[1] In trials of crimes involving gang-related violence, prosecutors

---

[1] See National Gang Intelligence Center, *2011 National Gang Threat Assessment: Emerging Trends*, p 15 (observing that "gang members are responsible for an average of 48 percent of violent crime in most jurisdictions"), available at <http://www.fbi.gov/stats-services/publications/2011-national-gang-threat-assessment/2011-national-gang-threat-assessment-emerging-trends> (accessed July 3, 2014) [http://perma:cc/P8WZ-Y88E]; National Gang Intelligence Center, *2013 National Gang Report*, p 52 (observing that gangs will "continue to vie for control of the territories they inhabit and will thereby continue to perpetrate violence and criminal activities in prisons and communities

across the state now seek to introduce expert testimony to help a jury understand the importance of particular fact evidence and the context in which the gang-related violence occurs. This case involves the application of the Michigan Rules of Evidence to that expert testimony.

We hold that if the prosecution presents fact evidence to show that the crime at issue is gang-related, expert testimony about gangs, gang membership, and gang culture may be admitted as relevant under MRE 402 and of "assist[ance] [to] the trier of fact to understand the evidence or to determine a fact in issue" under MRE 702. In establishing the requirements of these rules, the prosecution may use an expert to identify the significance of certain fact evidence—such as symbols, clothing, or tattoos—that, by itself, would not be understood by the average juror to be connected with gangs or gang-related violence. In applying MRE 402 and MRE 702 to the facts of this case, we conclude that the trial court appropriately exercised its role as gatekeeper in determining that expert testimony about gangs and gang culture would assist the jury in understanding the evidence.

Nevertheless, there are limits to what an expert may opine, even when there is an appropriate foundation that the crime at issue is gang-related. Accordingly, we also hold that MRE 404(a) precludes testimony that is specifically used to show that, on a particular occasion, a gang member acted in conformity with character traits commonly associated with gang members.

---

throughout the nation"), available at <http://www.fbi.gov/stats-services/publications/national-gang-report-2013/view> (accessed July 7, 2014) [http://perma.cc/XC2R-2M36].

The expert witness in this case exceeded these limitations when he provided his opinion that defendant committed the crimes at issue because he acted in conformity with his gang membership. Specifically, the expert witness testified that because the defendant was a gang member, he was "posted up at" the scene of the crime "with a purpose," namely, to give him and his fellow gang members "the chance to shoot" at someone and defend the gang's turf. This improper character testimony affected both the element of premeditation in the first-degree-murder charge against defendant and the self-defense claim that defendant raised with respect to both first-degree murder and the lesser included offense of second-degree-murder. We therefore affirm the result of the Court of Appeals and remand this case to the Calhoun Circuit Court for a new trial.

## I. FACTS AND PROCEDURAL HISTORY

On the evening of August 28, 2010, defendant, Levon Lee Bynum, was among a crowd of about 10 to 15 people gathered outside a party store in Battle Creek. Bynum and some of the other crowd members are alleged to be members of the Boardman Boys gang, the "territory" or "turf" of which borders the party store. Shortly before midnight, a Cadillac DeVille containing four people—Larry Carter, Josh Mitchell, Brandon Davis, and Darese Smith—arrived at the party store's parking lot. According to Mitchell, they were there to purchase Swisher Sweets and vodka so they could continue their all-day consumption of alcohol and marijuana, which they had begun at "bird-chirpin['] time" that morning. The crowd directed its attention toward the parking lot's newcomers, and Carter and Bynum exchanged words, although exactly what was said is in dispute. Nevertheless, these words resulted in Carter punching Bynum. In response, Bynum and

3

two others began shooting with the firearms that they had been carrying, causing Carter, Mitchell, Davis, and Smith to take shelter inside the party store. Carter collapsed on the floor of the party store and lay in a pool of his blood when first responders arrived and unsuccessfully attempted to resuscitate him. Mitchell and Davis discovered that they had also been shot. Unlike Carter, they survived their injuries after being transported to the hospital.

Battle Creek police identified Bynum and the other shooters from the surveillance video of the party store's parking lot. During police questioning, Bynum denied knowing Carter and the other victims and initially claimed that he had fired multiple times in the air to scare them off because he believed they posed a threat to his safety.[2] However, Bynum later admitted that it was possible that he had hit Carter, stating that "[b]ullets don't have names."[3] At all times, however, Bynum stated that he acted in self-defense, observing that he carried a gun only because "it's not safe to walk nowhere . . . ."

Bynum was arrested and bound over for trial in the Calhoun Circuit Court on charges of first-degree murder for the death of Carter,[4] two counts of assault with intent

---

[2] Similarly, Mitchell and Davis denied knowing Bynum, the other shooters, and the other members of the crowd.

[3] Because the police did not recover Bynum's firearm, forensic evidence could not conclusively connect Bynum's firearm to Carter's death. However, a forensics expert testified that the bullets retrieved from Carter's body came from the same firearm and were consistent with the type of firearm that Bynum carried.

[4] MCL 750.316.

4

to murder for the shootings of Mitchell and Davis,[5] carrying a concealed weapon,[6] and felony-firearm.[7]  In addition to calling Mitchell and Davis as eyewitnesses, the prosecution called Battle Creek Police Officers James Bailey and Tyler Sutherland to testify about the circumstances of the crime.  Both officers are part of the Battle Creek Police Department's Gang Suppression Unit.  Bailey helped to investigate the shooting at the party store and testified that Bynum was a known member of the Boardman Boys gang.  He also identified other members of the gang from the surveillance video.

Sutherland was proffered as an expert witness on gangs, gang membership, and gang culture, including his particular expertise about Battle Creek gangs.  Before Sutherland's testimony, the prosecution filed a motion in limine to allow Sutherland to present a PowerPoint presentation about gangs and gang culture that connected Bynum to the Boardman Boys gang and showed how Battle Creek gangs, including the Boardman Boys, appropriated symbolism from nationally organized gangs like the Bloods and the Crips.[8]  Defense counsel opposed the motion in limine and asserted in his written response that the presentation's "potential prejudicial impact far and away outweighs whatever trivial probative value it may possess."  Moreover, counsel claimed that the prosecution did not need the presentation to "introduce evidence via testimony of gang association and/or rivalries . . . ."  The court took the matter under advisement.

[5] MCL 750.83.

[6] MCL 750.227.

[7] MCL 750.227b.

[8] The motion in limine did not propose to introduce the presentation as substantive evidence in the case, only as a guide or roadmap to Sutherland's testimony.

During trial, the court revisited the issue. Defense counsel reiterated that he was "still objecting to the use of essentially most of this testimony on the basis that it is more prejudicial than probative." Specifically, he claimed that it was "not particularly relevant . . . whether [Bynum] is in [a] gang or not," although defense counsel also admitted that Sutherland could "offer his . . . testimony as to associations and behavior and conduct of these groups . . . ." Even so, photographs and references "to gangs on a national stage that [Bynum] is not a member of [are] more prejudicial [than] probative."

The court allowed Sutherland's testimony and PowerPoint presentations to proceed on the basis that the evidence was relevant to prove Bynum's motive for shooting Carter, Mitchell, and Davis.[9] However, it cautioned that it did not want the proposed testimony to "contain evidence simply relating to . . . the fact that [Bynum] is quote/unquote a bad person by virtue of the commission of . . . wanton offenses as part of what a gang does." As a result, the court "restrict[ed] the presentation to a question and response format so that [defense counsel] can object to particular issues if he finds the basis to do so . . . ."

In his testimony, Sutherland defined a gang as "a group of three or more individuals" who "collectively engage in criminal activity" and "identify themselves by a

---

[9] There is a factual dispute regarding which slides were shown to the jury as part of Sutherland's expert testimony. For the reasons explained later, our ruling relies only on the matters on which Sutherland verbally opined during his testimony, not on what slides he showed the jury. As a result, we need not resolve this factual dispute between the parties. Instead, we caution the prosecution that the court unsuccessfully sought to insulate this appeal from this very factual dispute when it directed that the "images on the power point presentation be separately preserved as a special record for subsequent appellate review" and assigned that task to the assistant prosecutor.

gang name," usually a street name or a geographical area corresponding to their turf. They also "adopt certain signs and symbols that they like from nationally recognized gangs," using them as "key identifiers" in their tattoos, graffiti, and clothes. According to Sutherland, the Boardman Boys satisfied the definition of a gang and often used a unique style of the letter "B" and a five-pointed star as their symbols, and Bynum had his street nickname, "Cannon," tattooed on his person.

One of the key principles of gang culture, Sutherland explained, is that a gang enforces respect on its turf through power and fear. Gang members take "every opportunity they can to show how powerful they are." Moreover, the Boardman Boys were engaged in an ongoing turf war with a rival gang, and the party store where these crimes occurred sits on the border between the two gangs' turfs.

Sutherland also discussed the different levels of gang membership: hardcore members (who are the leaders of the gang), associates (who are in the gang and "trying to increase their status"), and fringe members (who "want to be seen with the gang" but do not want to commit the gang's crimes). Bynum was a "hardcore member," according to Sutherland, "because of what he's done [and] what people have told us he's done." In particular, Bynum and other hardcore members "are the ones in the police reports" and are identified by people in the neighborhood as "committing the most violent crime[s] out of all the members in this gang."

Finally, Sutherland turned to the events at the party store, explaining that if Bynum and other members of the gang had not reacted to what they had perceived was a sign of Carter's disrespect, both the individual members who were slighted and the gang

7

itself would have lost respect in the ongoing turf war.  He also expressed his opinion of

Bynum's state of mind at the time of the shooting:

> [W]hen I see that incident, when I watch the video, they [the gang members, including Bynum] are all posted up at the store with a purpose. When they went to that store that day, they didn't know who they were going to beat up or shoot, but they went up there waiting for someone to give them the chance.  "Make us--give me [i.e., Bynum] a reason to--to shoot [you], to fight you, to show how tough we are, the Boardman Boys, on our turf."

Defense counsel did not specifically object to any of this testimony after the initial,

general objection to Sutherland's testimony.[10]

The jury convicted Bynum as charged.  Newly appointed appellate counsel moved

for a new trial in the circuit court, citing the ineffective assistance of trial counsel for

failing to object to Sutherland's testimony as improper propensity evidence.[11]  The court

rejected the ineffective-assistance claim because it was satisfied that trial counsel's

objections had preserved the claimed error in Sutherland's testimony.  The court also held

that the expert witness testimony was appropriate.

The Court of Appeals reversed Bynum's convictions in a split, unpublished

opinion per curiam.[12]  Contrary to the circuit court's judgment, the majority explained, in

relevant part, that trial counsel had not objected to much of Sutherland's testimony.

---

[10] Counsel also objected to Sutherland's qualification as an expert witness, but that objection is not at issue in this appeal.

[11] Indeed, appellate counsel called trial counsel's failure to object "kind of shocking."

[12] *People v Bynum*, unpublished opinion per curiam of the Court of Appeals, issued April 18, 2013 (Docket No. 307028).

Nevertheless, even under the plain-error standard for unpreserved claims of error, Bynum was entitled to relief on the basis of the prejudicial admission of improper testimony. In particular, Sutherland "presented extensive testimony that can only be characterized as improper propensity evidence,"[13] such as describing Bynum as a "hardcore" member of the Boardman Boys and opining that Bynum shot Carter with premeditation. Moreover, this evidence was prejudicial because "[t]he evidence of premeditation was threadbare, at best," even though "there was overwhelming evidence that Bynum participated in the shooting that led to Carter's death and that his self-defense theory was not particularly persuasive."[14]

The dissenting judge determined that the evidence about gang culture and the Boardman Boys "does not . . . become objectionable 'propensity' evidence simply because the expert opined further that defendant was not only a 'member' of the Boardman Boys, but a 'hardcore member.' "[15] Moreover, the dissenting judge concluded that evidence of gang membership is relevant if it relates to motive and that Sutherland "did not opine on defendant's claim of self-defense, indicate whether defendant's self-defense claim was believable, or state that defendant actually shot the victim with premeditation."[16]

---

[13] *Id*. at 7.

[14] *Id*. at 9.

[15] *Id*. at 3 (BOONSTRA, J., dissenting).

[16] *Id*. at 5.

We granted the prosecution's application for leave to appeal,[17] limited to the following issues:

> (1) whether the police officer's expert testimony regarding gangs and gang membership—especially the testimony as to the defendant's gang, the defendant's role in his gang, and premeditation—was more prejudicial than probative under MRE 403; (2) the extent to which the profiling factors listed in *People v Murray*, 234 Mich App 46, 56-58 [593 NW2d 690] (1999), apply to the admissibility of this expert testimony; (3) whether any error by the trial court with respect to this testimony was preserved; and (4) whether, if there was any such error by the trial court, the Court of Appeals correctly held that the defendant was entitled to a new trial or whether any error was harmless.[18]

## II. STANDARD OF REVIEW

The decision to admit evidence is within a trial court's discretion, which is reviewed for an abuse of that discretion.[19] Preliminary questions of law, such as whether a rule of evidence or statute precludes the admission of particular evidence, are reviewed de novo, and it is an abuse of discretion to admit evidence that is inadmissible as a matter of law.[20]

---

[17] Bynum also filed an application for leave to cross-appeal, claiming violations of the right to the effective assistance of counsel and the Confrontation Clause, evidentiary error, prosecutorial misconduct, and instructional error. Because we affirm the result of the Court of Appeals' judgment, we need not reach the merits of Bynum's cross-appeal and deny leave to cross-appeal, although many of the issues presented on cross-appeal are related to Sutherland's testimony.

[18] *People v Bynum*, 495 Mich 891, 891-892 (2013).

[19] *People v McDaniel*, 469 Mich 409, 412; 670 NW2d 659 (2003).

[20] *Id*.

If a defendant has failed to preserve a claim of evidentiary error, relief may be granted only upon a showing that a plain error affected the defendant's substantial rights and that the defendant is actually innocent or the error "seriously affected the fairness, integrity, or public reputation of judicial proceedings."[21]

## III. ANALYSIS

The Michigan Rules of Evidence provide the appropriate framework for reviewing the Court of Appeals' conclusion that Bynum is entitled to a new trial on the basis of evidentiary error. When considering whether to admit expert testimony, MRE 702 requires the trial court to determine that the expert testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue . . . ."[22] If the average juror does not need the aid of expert testimony to understand the evidence or determine a fact in issue, then the proffered testimony is inadmissible because " 'it merely deals with a proposition that is not beyond the ken of common knowledge.' "[23] Similarly, MRE 402 provides that "[e]vidence which is not relevant is not admissible."[24] As a result, an expert witness may not testify about matters that are irrelevant. The trial court thus acts

---

[21] *People v Carines*, 460 Mich 750, 774; 597 NW2d 130 (1999).

[22] Additionally, MRE 703 requires that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference . . . be in evidence."

[23] *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 790; 685 NW2d 391 (2004), quoting *Zuzula v ABB Power T & D Co, Inc*, 267 F Supp 2d 703, 711 (ED Mich, 2003) (emphasis omitted).

[24] MRE 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

11

as a gatekeeper for expert testimony and has a fundamental duty to ensure that the proffered expert testimony is both relevant and reliable.[25]

MRE 404(a) prohibits the admission of character evidence except under limited circumstances:

> Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:

> (1) Character of accused. Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same; or if evidence of a trait of character of the alleged victim of the crime is offered by the accused and admitted[,] . . . evidence of a trait of character for aggression of the accused offered by the prosecution[.]

Application of these and other rules of evidence to expert testimony about gangs, gang membership, and gang culture has not been developed in our caselaw, although gang activity and gang culture have increasingly been the focus of federal, state, and local law enforcement agencies.[26] Indeed, the sharing of information about gang activity and gang culture across jurisdictions has created new expertise and new understanding to combat gang-related violence. Prosecutors are using that new expertise to help juries

---

[25] *Daubert v Merrell Dow Pharm, Inc*, 509 US 579, 589; 113 S Ct 2786; 125 L Ed 2d 469 (1993); *Gilbert*, 470 Mich at 780 n 46.

[26] In 1992, the FBI began the Safe Streets Violent Crime Initiative, which joins federal, state, and local law enforcement agencies to address gang-related crime. Federal Bureau of Investigation, Gangs, *Violent Gang Task Forces* <http://www.fbi.gov/about-us/investigate/vc_majorthefts/gangs/violent-gangs-task-forces> (accessed July 7, 2014) [http://perma.cc/M25P-MTBG]. The National Gang Intelligence Center provides centralized access to information about gangs and their growth, migration, and evolution. Federal Bureau of Investigation, Gangs, *National Gang Intelligence Center* <http://www.fbi.gov/about-us/investigate/vc_majorthefts/gangs/ngic> (accessed July 7, 2014) [http://perma.cc/S4A9-T2Q2].

understand the context of the crimes that they are prosecuting and, as a result, it is increasingly important for us to explain how this newly developed expertise fits within our existing rules of evidence.

As a threshold matter, applying MRE 402 and MRE 702 requires a trial court to act as a gatekeeper of gang-related expert testimony and determine whether that testimony is relevant and will assist the trier of fact to understand the evidence. The introduction of evidence regarding a defendant's gang membership is relevant and can "assist the trier of fact to understand the evidence" when there is fact evidence that the crime at issue is gang-related.[27] Ordinarily, expert testimony about gang membership is of little value to a fact-finder *unless* there is a connection between gang membership and the crime at issue.[28]

Sometimes, however, identifying whether a crime is gang-related requires an expert to establish the significance of seemingly innocuous matters—such as clothing, symbolism, and tattoos—as features of gang membership and gang involvement. At other times, "an expert's testimony that the crime was committed in rival gang territory

---

[27] MRE 702.

[28] It is foreseeable that certain criminal activity is unrelated to membership in a gang. If, for instance, a member of a gang is charged with domestic violence, the crime might not be gang-related and, as a result, evidence of gang membership might not be relevant to the defendant's guilt or innocence of the crime. Otherwise, "a juror might associate a defendant with such an affiliation as a person of bad character or someone prone to aggressive or violent behavior." *Utz v Commonwealth*, 28 Va App 411, 420; 505 SE2d 380 (1998). Of course, this example is not to say that an individual gang member cannot commit a gang-related crime as part of the gang's collective criminal activity without other gang members being present.

may be necessary to show why the defendant's presence in that area, a fact established by other evidence, was motivated by his gang affiliation."[29] In other words, understanding the connection between the crime and gang activity is sometimes beyond the ken of common knowledge. Accordingly, the relevance of gang-related expert testimony "may be satisfied by fact evidence that, at first glance, may not indicate gang motivations, but when coupled with expert testimony, provides the gang-crime connection."[30]

In the context of gang-related violence, we conclude that expert testimony may be admitted regarding general characteristics of gang culture for an appropriate purpose, such as helping to elucidate a gang member's motive for committing a gang-related crime. For example, the Kansas Supreme Court upheld testimony "that if someone got a member of the gang in trouble, the gang would retaliate" as part of "the State's attempt to establish a motive" for such retaliation.[31] The testimony, of course, must otherwise meet the rules of evidence before it can be admitted, and we particularly caution that MRE 404(a) limits the extent to which a witness may opine about a defendant's gang membership. As stated, MRE 404(a) provides that "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion . . . ." As a result, an expert may not testify that, on a particular occasion, a gang member acted in conformity with character traits commonly

---

[29] *Gutierrez v State*, 423 Md 476, 496; 32 A3d 2 (2011).

[30] *Id*.

[31] *State v Tran*, 252 Kan 494, 505; 847 P2d 680 (1993).

associated with gang members. Such testimony would attempt to prove a defendant's conduct simply because he or she is a gang member.

## IV. APPLICATION

## A. PRESERVATION

Before examining the merits of the claimed evidentiary errors at issue in this appeal, one threshold question we must answer is whether Bynum preserved these claims of evidentiary error. As previously noted, when the court revisited the prosecutor's motion to introduce Sutherland's PowerPoint presentation during trial, defense counsel stated that he was "still objecting to the use of essentially most of this testimony on the basis that it is more prejudicial than probative" and that "[i]t's not particularly relevant as it relates to this particular Defendant, whether he is in a gang or not." Nevertheless, defense counsel admitted that Sutherland "can offer his . . . testimony as to associations and behavior and conduct of these groups and what not." Counsel was particularly worried that "the use of photographs of gangs . . . and references to gangs on a national stage that this particular Defendant is not a member of is more prejudicial than probative." Additionally, counsel objected to proposed photographs of Bynum and other alleged gang members that he characterized as "nothing less than 'mug shots' taken when [Bynum] was in custody."

The court allowed the presentation to proceed but restricted it "to a question and response format so that [defense counsel] can object to particular issues if he finds the

15

basis to do so . . . ."[32]   While the scope of Bynum's objection to Sutherland's testimony seemed to change from one statement to the next, it is clear that counsel focused on the prejudicial effect of the PowerPoint presentation's being shown to the jury.  At most, counsel's statement that he was objecting "to the use of essentially most of this testimony" because "[i]t's not particularly relevant" is akin to a general objection to the admissibility of any mention of gangs or gang-related violence.  As a result, we conclude, as did the Court of Appeals, that a general objection to the relevance of Sutherland's expert testimony is preserved.  However, because the court envisioned that the question-and-answer format of Sutherland's testimony would provide defense counsel with an opportunity to tender objections to specific questions or responses, we also conclude that because defense counsel failed to object to specific portions of Sutherland's testimony, any specific claims of error arising out of the content of Sutherland's testimony must be examined under the standard for unpreserved error.

To summarize: We will apply our standard of review for preserved error to the threshold inquiry regarding whether any expert testimony about gangs is admissible in the first instance under MRE 402, and if it is admissible in the first instance, we will apply our standard of review for unpreserved error to the claims that the extent of the testimony admitted at trial violated MRE 404(a) and other pertinent rules of evidence. We now proceed to these inquiries.

---

[32] Counsel's only objection during Sutherland's question-and-answer testimony was to a question about whether the victims were armed, which the court overruled after a foundation for Sutherland's knowledge of the question had been established.  Counsel also objected to whether Sutherland qualified as an expert witness, although the court overruled counsel's objection.  Neither of these objections is at issue in this appeal.

16

## B. FACT EVIDENCE REGARDING GANG-RELATED VIOLENCE

As stated, in applying MRE 402 and 702 to the facts of this case, fact evidence to show that the crime at issue is gang-related provides a sufficient basis for a trial court to conclude that expert testimony regarding gangs is relevant and will be helpful to the jury, although the significance of fact evidence and its relationship to gang violence can be gleaned from expert testimony.

Sutherland testified that the shootings occurred on disputed gang territory, and "an expert's testimony that the crime was committed in rival gang territory may be necessary to show why the defendant's presence in that area, a fact established by other evidence, was motivated by his gang affiliation."[33] Moreover, fact evidence connected Bynum and the other shooters to the Boardman Boys: Sutherland testified that Bynum has a tattoo of his street nickname (Cannon), which was an identifier of his gang membership, and Bailey testified that Bynum was a known member of the gang, as were the other shooters. As a result, the location of the crimes, when combined with evidence that multiple gang members were involved in the crimes, provided sufficient fact evidence to conclude that expert testimony regarding gangs, gang membership, and gang culture would be relevant and helpful to the jury in this case.

## C. INADMISSIBLE EXPERT TESTIMONY UNDER MRE 404(a)

The prosecution argues that Sutherland's testimony was proper evidence of motive because "[i]n a prosecution for murder proof of motive, while not essential, is always

---

[33] *Gutierrez*, 423 Md at 496.

relevant."[34]  Even if expert testimony about gang culture may be introduced, however, MRE 404(a) precludes the expert from providing evidence of a gang member's character to prove action in conformity with gang membership.  Of course, a gang expert may testify that a gang, in general, protects its turf through violence as an explanation for why a gang member might be willing to commit apparent random acts of violence against people the gang member believes pose a threat to that turf.[35]  Sutherland did so in discussing aspects of gang culture generally, and this testimony was proper under MRE 404(a).

Nevertheless, Sutherland veered into objectionable territory when he opined that Bynum had acted in conformity with his gang membership with regard to the specific crimes in question.[36]  In particular, Sutherland used Bynum's gang membership and the character traits associated therewith to describe what he saw on the surveillance video.  In so doing, his testimony suggested Bynum's guilt in the underlying crime:

> [W]hen I see that incident, when I watch the video, they [the gang members, including Bynum] are all posted up at the store with a purpose. When they went to that store that day, they didn't know who they were

---

[34] *People v Mihalko*, 306 Mich 356, 361; 10 NW2d 914 (1943).

[35] See, e.g., *People v Bryant*, 241 Ill App 3d 1007, 1022-1023; 182 Ill Dec 376; 609 NE2d 910 (1993) (explaining that gang-related evidence is proper "to offer a motive for an otherwise inexplicable act" when "the trial court allowed in only as much gang testimony as was necessary to establish this motive").

[36] Cf. *United States v Mejia*, 545 F3d 179, 190-191 (CA 2, 2008) (explaining that when an expert officer's testimony narrows from general characteristics of gangs, to a particular gang, to a particular defendant, the expert "displac[es] the jury by connecting and combining all other testimony and physical evidence into a coherent, discernable, internally consistent picture of the defendant's guilt").

18

going to beat up or shoot, but they went up there waiting for someone to give them the chance. "Make us--give me [i.e., Bynum] a reason to--to shoot [you], to fight you, to show how tough we are, the Boardman Boys, on our turf."

In contrast to his otherwise admissible general testimony about aspects of gang culture, Sutherland's testimony interpreting the video evidence specifically connected those character traits to Bynum's conduct in a particular circumstance. Such testimony impermissibly attempted to "prov[e] action in conformity" with character traits common to all gang members on a particular occasion. As a result, this testimony violated MRE 404(a).

Therefore, we agree with the Court of Appeals that Sutherland exceeded the limitations of expert testimony when he opined that he believed that Bynum and others went to the party store "waiting for someone to give [the Boardman Boys] the chance" to protect their turf. That testimony was an opinion that Bynum acted in conformity with the character traits commonly associated with gang members on a particular occasion, in violation of MRE 404(a).

## D. PREJUDICE

As stated, defense counsel did not specifically object to Sutherland's testimony that Bynum acted in conformity with his gang membership in committing the charged crimes. As a result, Bynum must show that a plain error affected his substantial rights and that he is actually innocent or that the error "seriously affected the fairness, integrity, or public reputation of judicial proceedings."[37]

---

[37] *Carines*, 460 Mich at 774.

19

Sutherland actually and clearly opined on Bynum's character traits as a gang member to link him to the particular conduct at issue when he explained what he saw on the surveillance video: Bynum's conformity with traits commonly associated with gang members on a particular occasion to show " 'how violent we [i.e., Bynum and the other Boardman Boys] can be . . . .' " Under the standard articulated above, Sutherland exceeded the limitations of MRE 404(a) when he went beyond discussing the general characteristics of gang membership and gang culture and instead testified that he believed that Bynum exemplified, on a particular occasion, the character trait of a gang member who needed to protect territory through violence. The error in allowing this testimony to be admitted was plain.

Furthermore, we agree with the Court of Appeals that, although "there was overwhelming evidence that Bynum participated in the shooting that led to Carter's death and that his self-defense theory was not particularly persuasive," the evidence of Bynum's premeditation "was threadbare, at best."[38] As a result, "it is likely that, had the jury not heard the propensity evidence or been told by an expert that Bynum and his friends went to the store with the intent to shoot someone, . . . it would have found that the prosecutor did not prove that Bynum premeditated beyond a reasonable doubt."[39] Moreover, Sutherland's testimony further weakened Bynum's self-defense claim by suggesting that Bynum's propensity for violence meant that he intended to shoot someone at the party store on the night of the shooting.

---

[38] *Bynum*, unpub op at 9.

[39] *Id*. at 10.

20

*Carines* also requires that the error "seriously affected the fairness, integrity, or public reputation of judicial proceedings."[40] An error of this magnitude satisfies this requirement because it inevitably led the jury to find that Bynum premeditated in the murder on the basis of his membership in a gang and the asserted character trait that he was thus prone to violence. Particularly when the opinion is proffered by an officer of the law, the error seriously affects the fairness, integrity, or public reputation of the proceedings.[41] As a result, Bynum is entitled to relief.

As for the nature of Bynum's relief, the prosecution argues that a new trial is not warranted because any evidentiary error would not have affected the jury's rejection of Bynum's self-defense claim, only its finding of premeditation—an element of first-degree murder, but not the lesser included offense of second-degree murder. As a result, the prosecution requests that, if we conclude that Bynum is entitled to relief, we enter a guilty verdict on the lesser included offense of second-degree murder, which does not require a finding of premeditation. We decline to do so because we cannot so easily separate the prejudice regarding premeditation from the prejudice regarding self-defense. While the evidence against Bynum's self-defense claim was stronger than the evidence supporting premeditation, a conclusion that Bynum premeditated necessarily entails a rejection of his self-defense claim. Moreover, Sutherland's testimony implicated Bynum's propensity for violence relating to both the murder charge and his self-defense

---

[40] *Carines*, 460 Mich at 774.

[41] Cf. *People v Murray*, 234 Mich App 46, 55; 593 NW2d 690 (1999) (noting "the danger that [police officer expert] testimony may have an aura of special reliability and trustworthiness") (citations and quotation marks omitted).

claim, and Sutherland's opinion rejecting Bynum's self-defense claim cannot be considered merely cumulative to the prosecution's other evidence of Bynum's guilt.

By proffering an opinion that Bynum exhibited the character trait of violence commonly associated with gang members to explain how Bynum allegedly premeditated in the murder, Sutherland gave the jury a separate reason for rejecting Bynum's self-defense claim. In particular, Sutherland's testimony provided jurors with a specific basis to reject Bynum's statement to police that he was on his guard because "it's not safe to walk nowhere" and was "scared for [his] life." Unlike the partial dissent, we cannot look behind the jury's decision to reject Bynum's self-defense claim and determine, as a matter of law, that this claim was objectively unreasonable.[42] When considering the other evidence adduced at trial without Sutherland's testimony, a reasonable jury could have concluded that Bynum's purported subjective belief of his danger was objectively reasonable, given that the victims drove up and, within a matter of seconds, Carter began assaulting Bynum. That the victims were unarmed does not weaken the objective threat when there was no outward indication, one way or the other, of that fact. Moreover, the speed with which the verbal altercation escalated into a physical altercation belies the partial dissent's claim that Bynum could have retreated easily. Accordingly, we agree with the Court of Appeals that Bynum is entitled to a new trial.[43]

_____

[42] The partial dissent claims to profess that "this very issue is one submitted to the jury," *post* at 5 (emphasis omitted), yet we, not the partial dissent, would again submit the self-defense issue to a jury to accept or reject.

[43] Because it is not necessary to this award of relief, we do not reach the issue of whether it was also reversible error for the trial court to admit Sutherland's testimony regarding Bynum's status as a "hardcore member" of the Boardman Boys. We leave it to the trial

## V. CONCLUSION

As stated, we hold that MRE 402 and MRE 702 require a trial court to act as a gatekeeper for the admission of relevant expert testimony that will help the fact-finder "to understand the evidence or to determine a fact in issue . . . ." Such expert testimony may meet these requirements when there is fact evidence that the crime at issue is gang-related. However, when the connection between the crime and gang activity is beyond the ken of common knowledge, the requirements of MRE 402 and MRE 702 "may be satisfied by fact evidence that, at first glance, may not indicate gang motivations, but when coupled with expert testimony, provides the gang-crime connection."[44] In applying MRE 402 and MRE 702 to the facts of this case, we conclude that the trial court appropriately exercised its role as gatekeeper in determining that expert testimony about gangs and gang culture would assist the jury in understanding the evidence.

court to assess the admissibility of such testimony if and when it is offered at retrial, as well as to resolve any other challenges regarding gang-related testimony not otherwise addressed in this opinion. In that regard, we also note that, of course, gang-related testimony remains subject to MRE 403. See, e.g., *People v Musser*, 494 Mich 337, 356-357; 835 NW2d 319 (2013) (stating that "a trial court has a historic responsibility to always determine whether the danger of unfair prejudice to the defendant substantially outweighs the probative value of the evidence sought to be introduced before admitting such evidence") (citation and quotation marks omitted). We further note, in light of Bynum's argument that there was never a line drawn between fact evidence and expert testimony at his first trial, that

> [t]he potential for prejudice [when a police officer testifies as both an expert and a fact witness] can be addressed by means of appropriate cautionary instructions and by examination of the witness that is structured in such a way as to make clear when the witness is testifying to the facts and when he is offering his opinion as an expert. [*United States v Mansoori*, 304 F3d 635, 654 (CA 7, 2002).]

[44] *Gutierrez*, 423 Md at 496.

Additionally, an expert witness may not use a defendant's gang membership to prove specific instances of conduct in conformity with that gang membership, such as opining that a defendant committed a specific crime because it conformed with his or her membership in a gang. Such testimony violates MRE 404(a). Because Bynum was prejudiced by the expert opinion that, on a particular occasion, he acted in conformity with character traits commonly associated with gang members, we conclude that he is entitled to a new trial. We therefore affirm the result of the Court of Appeals' judgment and remand this case to the Calhoun Circuit Court for further proceedings consistent with this opinion.

Mary Beth Kelly
Michael F. Cavanagh
Stephen J. Markman
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant / Cross-
        Appellee,

v                               No. 147261

LEVON LEE BYNUM,

        Defendant-Appellee / Cross-
        Appellant.

_____

YOUNG, C.J. (*concurring in part and dissenting in part*).

I respectfully dissent from the majority's conclusion that the errors committed in the trial court warrant a new trial. I concur with the majority's conclusions that the testimony of Officer Tyler Sutherland, an expert on gangs and gang culture, was generally admissible, but that his specific statement opining on the issue of defendant's premeditation was inadmissible. Additionally, I agree that the prejudice resulting from the impermissible statement regarding defendant's state of mind warrants relief with respect to defendant's first-degree premeditated murder conviction.

However, I dissent from the majority's holding that the prejudice resulting from that improper testimony was inseparable from defendant's unpersuasive claim of self-defense.[1] The facts in the record belie defendant's contention that he had a *reasonable*

_____

[1] I note that both the Court of Appeals majority and this Court's majority have recognized the weakness of defendant's claim of self-defense. See *People v Bynum*, unpublished opinion per curiam of the Court of Appeals, issued April 18, 2013 (Docket No. 307028),

belief that deadly force was necessary to repel the aggressor's attack. When accounting for the relevant facts, it becomes apparent that, notwithstanding Sutherland's inadmissible premeditation testimony, defendant's self-defense claim would have failed because any belief that deadly force was necessary was manifestly unreasonable.

As a result, I dissent from the majority's conclusion that defendant is entitled to a new trial, and I would instead enter a conviction on the lesser-included offense of second-degree murder.

## I. PLAIN ERROR STANDARD

The majority correctly concludes that the evidentiary error of the improperly admitted testimony is unpreserved. Because defendant's counsel failed to raise the proper objections, it is defendant's burden on appeal to show plain error affecting substantial rights.[2] Defendant must show that (1) an error occurred, (2) the error was clear or obvious, and (3) the error prejudiced him—meaning that it affected the outcome of the lower court's proceedings.[3] If defendant meets this burden, it is within the appellate court's discretion to reverse, which is warranted only when the error resulted in the conviction of an actually innocent defendant or when an error seriously affected the "fairness, integrity or public reputation of judicial proceedings . . . ."[4] In other words, in

_____

p 9 (stating that defendant's "self-defense theory was not particularly persuasive"); *ante* at 20.

[2] *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

[3] *Id*.

[4] *Id*. (quotation marks and citation omitted).

2

order get a new trial, defendant must show that the error was decisive with regard to his self-defense claim. Otherwise, the proofs at trial sustain a charge of second-degree murder.

## II. DEFENDANT'S SELF-DEFENSE CLAIM

Because defendant timely raised the issue of self-defense, the prosecution bore the burden at trial of disproving that the killing was done in self-defense.[5] By enacting MCL 780.972, the Legislature codified the common-law requirement that for a killing to be justified by self-defense, a defendant must have both a subjectively honest belief and an *objectively reasonable* belief that the use of deadly force is *necessary* to prevent imminent death or great bodily harm.[6] In other words, a defendant must avoid the use of deadly force if he can safely and reasonably do so, for example by applying nonlethal force.[7] Furthermore, when outside of one's dwelling, a defendant's failure to withdraw from the altercation may be considered in deciding whether the defendant honestly and *reasonably* believed there was a need to employ deadly force.[8]

---

[5] *People v Dupree*, 486 Mich 693, 709-710; 788 NW2d 399 (2010). The prosecution must disprove defendant's self-defense claim beyond a reasonable doubt. *People v Bell*, 155 Mich App 408, 414; 399 NW2d 542 (1986).

[6] See *People v Riddle*, 467 Mich 116, 126-127; 649 NW2d 30 (2002).

[7] *Id.* at 129 ("If it is possible to safely avoid an attack then it is not *necessary*, and therefore not permissible, to exercise deadly force against the attacker.").

[8] See *People v Richardson*, 490 Mich 115; 803 NW2d 302 (2011); *Riddle*, 467 Mich at 127.

3

Sutherland's impermissible testimony, which exclusively concerned defendant's *subjective motive* for the use of deadly force, could not affect the inquiry whether defendant's belief in the necessity of using deadly force was *objectively reasonable.*[9] That the victim swung first does not support defendant's alleged reasonable belief that the situation required the use of deadly force.[10] Defendant and his companions outnumbered the victims nearly three-to-one and possessed numerous weapons, while the victim and his companions had none. Moreover, there was no evidence adduced at trial that the victim or his companions gave any indication that they had weapons.[11] Given these facts, defendant undeniably had the ability to withdraw from the altercation or to use nondeadly force to parry the victim's threat.[12] He did neither.[13] Instead, surrounded by fellow gang members, some of whom were armed, he stood pat, pointed the gun at the

---

[9] By purporting to be unable to easily "separate the prejudice regarding premeditation from the prejudice regarding self-defense," the majority fails to fully account for the distinction between defendant's subjective belief in the need to employ deadly force and the objective reasonableness of that belief. The majority does not even directly assess this use of deadly force question.

[10] See *Riddle*, 467 Mich at 129.

[11] One could reasonably infer that the victim's choice to *throw a punch* at defendant (who was surrounded by a substantial group of men), rather than, say, pull a gun or draw a knife, was evidence that he wasn't armed. Indeed, defendant's contention that his belief that lethal force was necessary is compromised by the lack of *any* record evidence that would have led defendant to reasonably believe the victims were armed.

[12] See *id*.

[13] By concluding that the speed "with which the verbal altercation escalated into a physical altercation belies the . . . claim that Bynum could have retreated easily," the majority not only fails to account for the potential use of nondeadly force but ignores that defendant's group vastly outnumbered the victim and his companions.

4

victim's chest, and fired. Whatever defendant's subjective belief was, these facts are fatal to defendant's assertion that it was objectively reasonable to believe that lethal force was necessary.[14] But more to the point, *this very issue is one submitted to the jury*. In my judgment, the majority improperly concludes that the prejudicial effect of Sutherland's improper testimony extended to defendant's self-defense claim.

For these reasons, I conclude that the error in admitting Sutherland's impermissible statement was not prejudicial to defendant's self-defense claim such that a different outcome would have been even remotely likely if not for the evidentiary error.

### III. CONCLUSION

Because any prejudice to defendant's claim of self-defense was not outcome-determinative, I respectfully dissent from the majority's holding that defendant is entitled to a new trial. Although one part of Sutherland's testimony improperly touched on premeditation, the jury's findings on all the elements of the necessarily lesser-included offense of second-degree murder remain unaffected.[15] Because there exists no outcome-determinative error regarding defendant's claim of self-defense, the jury's remaining

---

[14] The prosecutor clearly made this point in his closing argument stating: "[I]f you can in a safe fashion back out of a situation, you are required to do so before you use deadly force," and that "there is no question that Levon Bynum had the opportunity and had the means of exiting that situation without ever having drawn the gun that he was carrying, pointing the gun he was carrying, or firing the gun that he was carrying."

[15] See MCL 750.316; MCL 750.317; *People v Carter*, 395 Mich 434, 437; 236 NW2d 500 (1975).

5

factual determinations are sufficient to sustain a conviction of second-degree murder. Therefore, I would remand this matter for the entry of such a conviction.

Robert P. Young, Jr.