# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

　　　　Plaintiff-Appellee,

v

MICHAEL DWAYNE CARVER,

　　　　Defendant-Appellant.

UNPUBLISHED
August 29, 2017

No.　328157
Kalamazoo Circuit Court
LC No.　2014-000448-FC

---

Before:　GADOLA, P.J., TALBOT, C.J., and GLEICHER, J.

TALBOT, C.J. (*concurring in part and dissenting in part*)

　　　　I concur with the majority's opinion that the closely analogous circumstances presented in *People v Ackley*, 497 Mich 381; 870 NW2d 858 (2015), and *People v Trakhtenberg*, 493 Mich 38; 826 NW2d 136 (2012), compel the conclusion that Jones's decision to forego further investigation into the issues of child suggestibility and related concerns fell below an objective standard of reasonableness.　However, I respectfully dissent from the majority's opinion that defendant is entitled to a new trial as a result of Jones's failure to do so.　In my view, it is not reasonably probable that the outcome of defendant's trial would have been different had Jones conducted a more thorough investigation.　According to the majority, Jones "would have realized the need for expert testimony on the unique issues involving accusations by very young children," had he conducted a more thorough investigation into the scientific fields discussed by Swerdlow-Freed at the evidentiary hearing.　With this conclusion, I cannot agree.　Under the circumstances presented by this case, it would have been reasonable for Jones to forego expert testimony in favor of what he termed a more "straight line" defense, had that decision been the product of a complete investigation.　Accordingly, I would reverse the trial court's order granting defendant's motion for a new trial.

　　　　As an initial matter, I do not agree that the credibility contest between defendant and the victim was as mismatched as the majority has presented it.　Although the majority has characterized the victim's disclosure as having been spontaneously made, and without apparent motive, it is undisputed that the disclosure arose after the victim's mother, Samona Allen, specifically asked, "[H]as anybody touched you[?]"　Moreover, the victim initially responded by claiming that her three-year-old brother touched her.　It was only after Allen rejected this response that the victim made allegations against defendant.　This first confrontation regarding the victim's allegations may also have provided a motive for the victim to change her story.　There was evidence that after the victim implicated her brother, Allen warned her that she would

-1-

be in trouble if she was untruthful, and the victim confirmed at trial that she is physically disciplined when she is "bad." In light of Allen's clear dissatisfaction with her first response, it is not difficult to infer that the victim may have been driven to provide an alternative answer to avoid physical discipline.

Additionally, this was not the only improper questioning that the victim endured. Rather, she was questioned *repeatedly* within hours of first accusing defendant of sexual assault. As already noted, Allen first questioned the victim in the bathroom. Shortly thereafter, Allen took the victim to the hospital, where she was questioned a second time by the physician who examined her. Finally, she was questioned, yet again, during a confrontation that took place later that day and involved several adult relatives, including defendant. Importantly, none of the people making inquiries of the victim were trained in forensic interviewing protocol. It was not until approximately one week later, when the victim spoke with a forensic interviewer, that she discussed the incident with a person who had training in appropriate interviewing techniques. The victim was also questioned in the course of the court proceedings, at the preliminary examination and trial in this matter. Unsurprisingly, each time she was forced to discuss the topic, the victim's description of the incident varied slightly. Although many of the variations were minor or insignificant, others were more central to the assault. For example, she told the emergency room physician that defendant told her to take her pants and underwear off, but when she described the encounter later, the victim indicated that defendant did not speak and stated that they were both clothed. Similarly, it was initially believed that the assault occurred at night, after defendant retuned to the house intoxicated, and the victim testified at trial that it happened when she went to defendant's bedroom during the night. However, during the forensic interview, the victim reported that it occurred during the day. And, most importantly, the victim may have waivered in her accusations against defendant—defendant and his mother both testified that the victim recanted at some point on March 1, 2014.

Given the underlying circumstances, I am not of the opinion that expert testimony was necessary in this case. Expert testimony is only admissible if it is helpful to the trier of fact. *People v Bynum*, 496 Mich 610, 624; 852 NW2d 570 (2014). "If the average juror does not need the aid of expert testimony to understand the evidence or determine a fact in issue, then the proffered testimony is inadmissible because it merely deals with a proposition that is not beyond the ken of common knowledge." *Id*. (citation and quotation marks omitted). While it is true that an expert in forensic psychology may have been able to provide a more scientific explanation of child suggestibility and its associated risk factors, I do not believe the underlying principles, as applied to this case, are outside the realm of common knowledge. Rather, the average juror is equipped with sufficient knowledge to recognize that young children are susceptible to outside influences and are not always accurate informants for any number of reasons. As such, it would have been reasonable for Jones to make an informed and strategic decision to refrain from calling an expert witness, particularly when doing so would invite the prosecution to elicit potentially damaging testimony on cross-examination or call its own expert to rebut any opinion that was favorable to the defense.

Moreover, despite Jones's limited knowledge regarding the science behind child suggestibility, many of the risk factors described by Swerdlow-Freed at the evidentiary hearing were, indeed, presented to the jury by way of other witnesses and Jones's arguments. For example, Swerdlow-Freed explained that children between the ages of 3 and 5 years old are the

most suggestible and the risk of suggestibility may be increased by a biased interviewer, improper questioning, or other pressures. This information was already before the jury, as several witnesses described the general principles of forensic interviewing and the importance of avoiding leading questions, as well as approaching a child with an unbiased mindset. Likewise, the concerning impact that repeated questioning might have on a young child was explored by both the prosecution and defense in their closing arguments.

For these reasons, I do not believe that defendant was prejudiced as a result of Jones's performance. Jones ultimately presented a reasonable defense by highlighting the discrepancies in the victim's statements, while also drawing the jury's attention to other weaknesses in the prosecution's case, i.e., the lack of physical evidence that an assault occurred, the victim's fear of physical punishment as a possible motivating factor to falsely accuse defendant, and the police department's failure to investigate several leads that may have exculpated defendant. From his testimony at the evidentiary hearing, Jones continued to believe that the best approach for defendant's case was a direct, factually based challenge of the prosecution's proofs. Thus, it is unlikely that Jones would have called an expert witness to testify at defendant's trial even if he had properly educated himself regarding child suggestibility before making that choice. Accordingly, I do not believe it is reasonably probable that Jones's performance affected the outcome of the proceedings and I would, therefore, reverse the trial court's order granting defendant a new trial.

/s/ Michael J. Talbot