# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JAMAL DEVONTA BENNETT,

        Defendant-Appellant.

UNPUBLISHED
April 17, 2018

No. 328759
Kent Circuit Court
LC No. 15-000869-FC

---

## ON REMAND

Before: SAWYER, P.J., and MARKEY and O'BRIEN, JJ.

PER CURIAM.

Defendant was convicted by a jury of second-degree murder, MCL 750.317, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. He was sentenced to 30 to 100 years' imprisonment for the second-degree murder conviction and two years' imprisonment for the felony-firearm conviction. He appealed his convictions, and we affirmed. *People v Bennett*, unpublished per curiam opinion of the Court of Appeals, issued November 17, 2016 (Docket No. 328759) (*Bennett I*), vacated in part & remanded, lv den in part ___ Mich ___; 905 NW2d 599 (2018). In that opinion, we concluded that the trial court erred by admitting two music videos that defendant appeared in as well as other testimony concerning defendant's and other's gang affiliations, but we held that a new trial was not required because the errors were not outcome determinative given the substantial amount of untainted evidence against defendant. *Id*. at 1-3. On January 24, 2018, our Supreme Court vacated the portions of our opinion stating that the erroneous admission of the music videos and gang-affiliation evidence was harmless and remanded the case to this Court for reconsideration of those issues. *People v Bennett*, ___ Mich ___; 905 NW2d 599, 600 (2018) (*Bennett II*). The Supreme Court explained as follows:

> The Court of Appeals correctly stated that "[a] preserved error in the admission of evidence does not warrant reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Burns*, 494 Mich 104, 110[; 832 NW2d 738] (2013) (quotation marks and citation omitted). However, the Court of Appeals failed to adequately explain why the erroneous admission of the music videos was harmless under this standard, especially in light of the prosecutor's concession

-1-

that the record does not reflect that this was a gang-motivated killing, the defendant's admission that he was the shooter, and, in particular, the defendant's asserted affirmative defenses of self-defense and defense of others, which the prosecution bore the burden of disproving beyond a reasonable doubt. *People v Dupree*, 486 Mich 693, 697[; 788 NW2d 399] (2010). On remand, the Court of Appeals shall engage in an examination of the entire cause and reconsider whether it is more probable than not that the preserved error in the admission of the music videos was outcome determinative. *Burns*, 494 Mich at 110.

Because the error in the admission of the gang-affiliation testimony was not preserved, the Court of Appeals shall review that error under the plain-error standard. *People v Carines*, 460 Mich 750, 763-764[; 597 NW2d 130] (1999). In determining whether the defendant has carried his burden of showing prejudice, the Court of Appeals shall take into account the considerations noted above. Finally, in relation to both errors, the Court of Appeals shall address whether the erroneously admitted evidence, in conjunction with the prosecutor's arguments in closing that this evidence showed the "mentality" of the defendant and his friends on the night of the offense and the "lifestyle" they lived, constituted impermissible character evidence used to prove that the defendant "acted in conformity with the character traits commonly associated with gang members on a particular occasion, in violation of MRE 404(a)." *People v Bynum*, 496 Mich 610, 631[; 852 NW2d 570] (2014); see also *Michelson v United States*, 335 US 469, 475-476[; 69 S Ct 213; 93 L Ed 168] (1948) (explaining that character evidence is generally inadmissible not because it "is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge"). [*Bennett II*, 905 NW2d at 600.]

After considering those issues, we again affirm defendant's convictions.

On March 15, 2013, Phillip Williams hosted a party. The party went into the early morning hours of March 16, 2013. The victim, Phillip's brother, was at the party. There were approximately 10 people at the party, including Phillip's cousin, Tayvonne Williams. Tayvonne invited a second group of 10 to 12 persons to the party that arrived later; this second group of people included defendant, Jolan Hines, Sammie Butler-Coleman, and Deontae Sawyer. Some of the original party guests became concerned that some of the newcomers were carrying firearms. One of the newcomers was taken into the hallway outside of the apartment and asked to leave, an altercation occurred, a chaotic fight involving multiple partygoers ensued in the hallway and apartment, and shots were fired. Many witnesses at trial were unable to state when, where, and why shots were fired, and there was conflicting testimony regarding exactly what occurred. Phillip was shot in the forearm and hip but survived, whereas the victim was shot in the head, stomach, and shoulder, and died.

Butler-Coleman testified that Hines was getting beaten up and that defendant obtained a gun and stated, "Get 'em off. Get 'em off. Or I'm gonna shoot." Tayvonne and Sawyer testified that they saw defendant shoot the victim. Kabreauna Mitchell, Tayvonne's sister, testified that she did not see the face of the shooter but saw that the shooter wore a red jacket.

Photos taken on the night of the incident and obtained from defendant's phone showed him wearing a red hoodie. Clarence Berry, defendant's friend, testified that he was getting out of his car when he heard shots being fired. When he got to the apartment door, Berry saw defendant fire a gun three to four times. Berry and defendant then ran to Berry's car, and Berry drove defendant to Hines's home. Berry then returned to the scene to get Hines and saw the victim lying dead in the living room. Robert Jordan, who was not a party attendee, was walking nearby when he heard the shooting. Jordan then saw three men, including one in a red hoodie with a gun, flee the apartment building, get in a car, and drive off.

Dr. Stephen Cohle, a forensic pathologist, testified regarding the victim's autopsy. The victim had three gunshot wounds, one to the head, one to the abdomen, and one to the shoulder. The head and abdomen gunshot wounds were fatal. Dr. Cohle did not find any soot or gunpowder residue around the wounds, indicating that the gun was approximately four or more feet away from the victim when the gun was fired. However, Dr. Cohle could not state this definitively regarding the shoulder and abdomen wounds given that the gunshot residue could have been on clothing, which was not tested.

At trial, two rap music videos that a detective found on YouTube were admitted into evidence. In the videos, defendant, Hines, Sawyer, and others present at the March 15 and 16, 2013 party rapped about drinking, smoking, guns, shootings, and sex. The trial court provided a cautionary instruction that the music videos should not be used to find that defendant is a bad person or that he is likely to commit crimes. There was also testimony at trial that defendant and others involved in the incident were members of a gang called the Bloods.

We begin by again addressing defendant's preserved challenge to the admission of the music videos. "A preserved error in the admission of evidence does not warrant reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *Burns*, 494 Mich at 110 (quotation marks and citation omitted). "An error is outcome determinative if it undermined the reliability of the verdict and, in making this determination, a court should focus on the nature of the error in light of the weight and strength of the untainted evidence." *People v Musser*, 494 Mich 337, 348; 835 NW2d 319 (2013) (quotation marks and citation omitted).

As explained in our previous opinion, the music videos should have been excluded as unfairly prejudicial under MRE 403. We reasoned as follows:

> The prosecution offered the music videos, both of which involved lyrics regarding violence and gun possession, as evidence of defendant's intent to kill, i.e., his "mentality of shoot first, ask questions later." However, one of the music videos was created approximately two months before the shooting at issue in this case, and the second was created approximately one year after. General lyrics about violence and gun possession, especially when made months apart from the crime at issue, are usually viewed as an exercise of machismo rather than a manifestation of an intent to kill. Here, defendant shot and killed the victim during a physical altercation at a birthday party, and we fail to see how vague lyrics involving violence and gun possession are sufficiently probative to survive MRE 403. [*Bennett I*, unpub op at 2 (citations omitted).]

In its remand order, our Supreme Court directed this panel to examine whether this error was outcome determinative in view of the entire cause, especially "the prosecutor's concession that the record does not reflect that this was a gang-motivated killing, the defendant's admission that he was the shooter, and, in particular, the defendant's asserted affirmative defenses of self-defense and defense of others, which the prosecution bore the burden of disproving beyond a reasonable doubt." *Bennett II*, 905 NW2d at 600.

With respect to the affirmative defense of self-defense or defense of others, MCL 780.972(1) provides, in relevant part:

> An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:

> (a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.

A self-defense or defense-of-others theory requires "evidence that [the] defendant had a reasonable and honest belief that the use of deadly force was necessary to prevent imminent death or great bodily harm." *People v Guajardo*, 300 Mich App 26, 42; 832 NW2d 409 (2013); see also *People v Orlewicz*, 293 Mich App 96, 102, 110; 809 NW2d 194 (2011), remanded in part on other grounds 493 Mich 916 (2012). "The reasonableness of a person's belief regarding the necessity of deadly force 'depends on what an ordinarily prudent and intelligent person would do on the basis of the perceptions of the actor.'" *Guajardo*, 300 Mich App at 42, quoting *Orlewicz*, 293 Mich App at 102. Evidence that a defendant's belief of imminent danger was either not honest or not reasonable is sufficient to defeat a self-defense claim. See *People v Fortson*, 202 Mich App 13, 20; 507 NW2d 763 (1993). The prosecutor bears the burden of disproving the defense of self-defense or defense of others beyond a reasonable doubt. *Dupree*, 486 Mich at 697.

In the present case, there is no evidence that defendant acted in self-defense or in defense of others. In other words, the evidence does not indicate that defendant honestly and reasonably believed that deadly force was necessary to prevent imminent death or great bodily harm. The record is bereft of any evidence that defendant held such a belief. In fact, in an interview with police on March 26, 2013, defendant denied that he was involved in the shooting, which contradicts his defense theory that he shot the victim in self-defense or in defense of others.

In addition to the lack of evidence that defendant honestly believed that deadly force was necessary to prevent imminent death or great bodily harm, the trial testimony reflects that any such belief would have been unreasonable. Tayvonne testified that defendant and the victim were "tussling" over the gun and that defendant then pushed the victim, stepped back, and shot the victim three times. Sawyer testified that defendant and the victim were fighting over the gun and that defendant then "[g]ot the best of" the victim, secured possession of the gun, and shot the victim. Berry testified that as he was approaching the apartment, he saw defendant in the doorway of the apartment firing a gun more than three times. Mitchell testified that she did not

see who fired the shots but that the shots came from the front door area of the apartment and that the only person standing near the front door was wearing a red jacket; defendant was the only person wearing red in a photograph taken of several persons who attended the party that night. Jordan testified that he was walking in the neighborhood when he heard shots fired and then saw some men, including a man wearing a bright red garment on his upper body and carrying a handgun, jump into a vehicle and speed off.

Butler-Coleman testified that a big fight broke out, a shot was fired, things were "getting wild," and he saw a gun on the floor. Hines was getting "[b]eat up crazy," and Butler-Coleman tried to get defendant to leave. Defendant stated, "[N]aw, naw, they on [Hines]. They on [Hines]." Butler-Coleman then saw defendant holding a gun, and defendant stated, "Get 'em off. Get 'em off. Or I'm gonna shoot." After hearing more shots, Butler-Coleman ran out of the apartment.

Dr. Cohle, the medical examiner who conducted the autopsy, testified that the victim suffered three gunshot wounds, two of which were fatal. One bullet entered the left cheek and passed upward through the brain; a second bullet entered the abdomen and passed through the liver, spleen, and stomach; and a third bullet caused a through-and-through wound of the left shoulder. The absence of gunpowder residue on the cheek indicated that the shot was fired from at least four feet away .

Overall, the evidence does not support a conclusion that it was reasonable for defendant to believe that it was necessary to use deadly force to prevent imminent death or great bodily harm. The testimony of Tayvonne and Sawyer indicated that defendant and the victim were fighting over the gun and that defendant ultimately obtained possession of the gun and then shot the victim. This testimony does not establish that the victim posed an imminent threat to the life of defendant or anyone else when defendant shot him. Butler-Coleman's testimony indicated that Hines was being beaten but does not establish that it was reasonable to conclude that the victim posed an imminent threat to Hines's life when defendant shot the victim. Further, the testimony of Tayvonne and Berry indicated that defendant fired the gun at least three times, and Dr. Cohle's testimony established that the victim suffered three gunshot wounds, two of which were fatal. No evidence exists to support the conclusion that it was reasonable to fire three shots—two of which were fatal and at least one of which was fired from a distance of at least four feet—at the victim.

Accordingly, given the strong evidence of guilt and the lack of evidentiary support for defendant's theory of self-defense or defense of others, we conclude that the error in admitting the music videos was not outcome determinative. Therefore, we again conclude that the error was harmless and does not require a new trial.

We now turn to the unpreserved issue of the admissibility of the gang-affiliation evidence. This Court reviews unpreserved issues for plain error affecting substantial rights. *Carines*, 460 Mich at 763-764. To establish entitlement to relief under the plain-error doctrine, a defendant must demonstrate that (1) an error occurred, (2) the error was clear or obvious, and (3) the error was prejudicial in that it affected the outcome of the lower court proceedings. *Id*. at 763. If a defendant satisfies those three requirements, reversal is warranted only if the defendant

is actually innocent or the error seriously affected the fairness, integrity, or public reputation of the proceedings. *Id*. at 763-764.

In our previous opinion, we noted that the admissibility of the gang-affiliation evidence was governed by MRE 404(b), which governs the admissibility of character evidence. *Bennett I*, unpub op at 2. We explained as follows:

> Pursuant to MRE 404(b), character evidence is generally inadmissible unless an enumerated exception applies. When a defendant's conduct at issue is not gang related, testimony regarding defendant's or others' gang affiliations is generally inadmissible in hopes of preventing jurors from assuming that the defendant is a person of bad character or prone to violent behavior. [*Bynum*, 496 Mich at 625-626]. However, testimony regarding an individual's gang affiliation is relevant when it explains a witness's bias or reflects on a witness's credibility. See *United States v Abel*, 469 US 45, 52; 105 S Ct 465; 83 L Ed 2d 450 (1984). [*Bennett I*, unpub op at 2-3.]

We noted that, although the shooting in this case did not seem to arise out of gang loyalty or territory, the gang-affiliation evidence was offered as an explanation of why multiple witnesses were reluctant or refused to identify defendant as the shooter. *Id*. at 3. We explained that the gang-affiliation evidence was therefore relevant given its tendency to reflect on the credibility of multiple witnesses. *Id*.

However, we found that the evidence was unfairly prejudicial and needlessly cumulative under MRE 403, explaining as follows:

> Testimony regarding an individual's gang affiliation is inherently prejudicial, *Bynum*, 496 Mich at 626, and the record reflects a substantial amount of evidence demonstrating the witnesses' bias in favor of defendant aside from their gang affiliation. For example, the prosecution elicited extensive testimony regarding the witnesses' familial relationships or friendships with defendant and other witnesses. Similarly, the prosecution also elicited testimony regarding the fact that several witnesses were charged with perjury as a result of their investigative subpoenas, were obstructive during the investigation in this matter, and had changed their stories several times. In light of this evidence, we feel compelled to agree with defendant's argument that the testimony regarding defendant's and others' gang affiliations was needlessly cumulative and unfairly prejudicial. [*Bennett I*, unpub op at 3.]

Despite the trial court's error in admitting the gang-affiliation evidence, we again conclude that the error was not outcome determinative. As previously discussed, there was strong evidence of defendant's guilt—particularly the multiple eye witnesses claiming that they saw defendant or someone matching defendant's description shoot the victim— and the record is bereft of support for defendant's theory of self-defense or defense of others. Accordingly, while we agree with defendant that the admission of the gang-affiliation evidence was unfairly prejudicial, we cannot conclude that its erroneous admission was outcome determinative in light

of the substantial amount of otherwise incriminating evidence against defendant. Therefore, a new trial is not required. See *Carines*, 460 Mich at 763-764.

Lastly, in its order vacating our prior opinion, our Supreme Court directed this panel to address whether the erroneous admission of the music video and gang-affiliation evidence, in conjunction with the prosecutor's arguments in closing that the evidence showed the "mentality" and "lifestyle" of defendant and his friends, constituted impermissible character evidence that was used to prove that defendant " 'acted in conformity with the character traits commonly associated with gang members on a particular occasion, in violation of MRE 404(a).' " *Bennett II*, 905 NW2d at 600, quoting *Bynum*, 496 Mich at 631. Our Supreme Court's remand order also noted language in *Michelson*, 335 US at 475-476, stating that character evidence is generally inadmissible not because it is irrelevant, but because "it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge."

MRE 404(a) provides, with exceptions not applicable here, that "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion[.]" Our Supreme Court held in *Bynum*, 496 Mich at 615-616, that "MRE 404(a) precludes testimony that is specifically used to show that, on a particular occasion, a gang member acted in conformity with character traits commonly associated with gang members." In *Bynum*, 496 Mich at 616, the prosecutor presented an expert witness on gangs; the expert witness exceeded the limitations of MRE 404(a) "when he provided his opinion that [the] defendant committed the crimes at issue because he acted in conformity with his gang membership." "MRE 404(a) limits the extent to which a witness may opine about a defendant's gang membership." *Id*. at 627. Our Supreme Court explained:

> [A]n expert may not testify that, on a particular occasion, a gang member acted in conformity with character traits commonly associated with gang members. Such testimony would attempt to prove a defendant's conduct simply because he or she is a gang member. [*Id*.]

In the present case, the prosecutor did not present an expert witness on gangs, and thus, unlike in *Bynum*, there was no expert testimony opining that defendant "acted in conformity with the character traits commonly associated with gang members on a particular occasion, in violation of MRE 404(a)." *Bynum*, 496 Mich at 631.

Moreover, we do not find that the erroneously admitted evidence, in conjunction with the prosecutor's assertions in closing argument that the evidence showed the "mentality" and "lifestyle" of defendant and his friends, constituted impermissible character evidence that defendant acted in conformity with the character traits of gang members on a particular occasion. While discussing defendant's claim of self-defense or defense of others in closing argument, the prosecutor stated, in relevant part:

> Now, there's an objective component there as well. Reasonably believed. Objectively, the defendant and his buddies came over with three guns. They came over with the mentality that you saw in those videos. The Judge is going to read you a limiting instruction of what you can use those videos for. You can use

those videos not to show that the defendant is a bad person, therefore you have to convict him, but to show—I'm using them to show what the defendant's intentions were, his *modus operandi*, his system in—in behaving in doing an act. That instruction you're going to get from the Judge.

Very clearly in those videos, the defendant sets forth his basic policy with regard to his buddies. And you see the defendant and Jolan Hines in two of these videos.

After discussing some of the lyrics in the music videos, the prosecutor stated as follows:

That, essentially, is a statement what the defendant intends whenever there is a confrontation. The use of gun violence at the slightest provocation. And that's precisely what we had happen in this particular case.

Defense counsel addressed the prosecutor's argument regarding the music videos during his closing argument, stating as follows:

A white boy sings a Beach Boy song, that doesn't make him a surfer. A black kid sings a rap song, that doesn't mean he adheres to everything in that rap song.

In the same fashion, if somebody is in a play and plays Adolph [sic] Hitler, that doesn't mean he agrees with Adolph [sic] Hitler or is Adolph [sic] Hitler. That's the argument being posed by the prosecutor for these videos.

As far as I'm concerned, I have yet to hear a rap song that I don't find offense [sic], whether the lyrics tend to be like they were in this video or not. I don't like rap. It doesn't hit me right.

However, there's a large segment of the society that likes it. I don't care. What are rap videos primary—or music verily [sic]—primarily involved with? Sex, drugs and violence. Does that mean anybody that sings a rap song is involved in the same thing? Prosecutor is making that argument to you. I'd ask that, basically, you go back there and ask yourself: Can I convict someone on a— beyond a reasonable doubt because the guy sang a rap video that I find offensive?

During rebuttal, the prosecutor responded to defense counsel's argument:

The problem with [defense counsel's] analysis of these videos is Deontae Sawyer is in prison on a home invasion. He is in prison on an armed robbery. He's living by that creed that he rapped about.

The problem is Jolan Hines is in jail. He is in jail because he possessed a gun. He admitted to using K2. He admits that he knows the difference between how K2 feels and marijuana feels. They rap about drug use. He admits that he carried a concealed weapon into these parties. He admits he knew Tyrell Harris in February 1st, 2013, and that he may have said, fuck the police. I agree with the lifestyle that Tyrell Harris is living when he committed a shooting. I mean, the

people in these videos, they are living that lifestyle. The defendant, after he knew he shot and killed [the victim], produced that "Cherry Bandana" video, which is almost solely about gun violence.

Again, although the music videos and gang-affiliation evidence were erroneously admitted, there was no expert testimony opining that defendant acted in conformity with the character traits commonly associated with gang members on a particular occasion. The prosecutor's arguments regarding the "mentality" and "lifestyle" of defendant and his friends pertained to the music videos; the statements did not directly assert that defendant and his friends acted in conformity with the character traits associated with gang members on a particular occasion. That is, the relationship of the prosecutor's argument to the character traits of gang members was attenuated because it was the behaviors and statements in the music videos as opposed to gang membership itself that the prosecutor was referencing.

But even if the prosecutor's comments in closing argument are interpreted as suggesting that defendant acted in conformity with character traits commonly associated with gang members on a particular occasion, this constituted a mere argument rather than evidence such as was presented in *Bynum*. The trial court instructed the jury to decide the case solely on the basis of the properly admitted evidence and that the lawyers' statements and arguments were not evidence. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). The trial court also instructed the jury as follows:

> You have heard evidence through a couple of videos, that [were] introduced to show that the defendant committed inappropriate behavior or conduct for which he is not on trial. If you believe this evidence, you must be very careful to consider it only for certain purposes. You may only think about whether this evidence tends to show proof of motive, opportunity, intent, preparation, plan, scheme, system of doing an act, knowledge, identity or absence of a mistake or accident or *modus operandi*.

> You must not consider this evidence for any other purpose. For example, you must not decide that it shows the defendant is a bad person or that he is likely to commit crimes. You must not convict the defendant here, because you think he is guilty of other bad conduct. All the evidence must convince you beyond a reasonable doubt that the defendant committed the alleged crime or you must find him not guilty.

We conclude that any interpretation of the prosecutor's argument as suggesting that defendant acted in conformity with character traits commonly associated with gang members on a particular occasion was attenuated from the prosecutor's actual argument such that the trial court's instruction was sufficient to cure any error.

Overall, when considering the trial court's instructions, along with the significant evidence of guilt and the lack of support for defendant's self-defense or defense of others theory as previously discussed, we again conclude that the evidentiary errors in this case did not affect the outcome at trial.

Affirmed.

/s/ David H. Sawyer
/s/ Jane E. Markey
/s/ Colleen A. O'Brien
