*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CARDOZIA BERNARD HAYMAN,

        Defendant-Appellant.

UNPUBLISHED
March 14, 2024

No. 359884
Washtenaw Circuit Court
LC No. 18-000703-FC

Before: LETICA, P.J., and HOOD and MALDONADO, JJ.

PER CURIAM.

Defendant, Cardozia Bernard Hayman, appeals by right his jury trial conviction of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(c) (sexual penetration under circumstances involving the commission of another felony)[1] and sentence of 15 to 30 years' imprisonment. On appeal, he argues (1) there was insufficient evidence to convict him of CSC-I; (2) the trial court erred by permitting the prosecution to introduce various other-acts evidence; and (3) he is entitled to resentencing because Offense Variables (OVs) 7, 8, and 19 were improperly assessed. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of Hayman's systematic sexual abuse of SJ, his wife's younger sister, beginning when she was a minor. Hayman's single count of conviction related to him forcing SJ, then a minor, to engage in a sexual act with an unidentified man. Hayman recorded the act, which occurred in his apartment. SJ testified the pattern of abuse began when she was 14 years old, and continued until early adulthood. During this time, Hayman sexually abused SJ and also forced her to engage in sexual acts with other men. SJ ultimately reported the sexual abuse to the police in 2014, when she was 26 years old. During the investigation, the police recovered two videotapes that Hayman made of SJ engaging in sexual acts. The prosecution alleged Hayman created the

---

[1] The other felony in this case was the production of child sexually abusive material (CSAM), MCL 750.145c(2).

videos before SJ turned 17 years old, but the prosecution could not conclusively date the videos or determine SJ's exact age. One video involved SJ being sexually penetrated by an unidentified man while Hayman recorded, and the other video involved SJ engaging in six distinct sexual acts with Hayman. The prosecution charged Hayman with seven counts of CSC-I, all premised on the sexual penetrations depicted in the two videos.

At trial, SJ testified about the various other acts in which Hayman forced her to engage. SJ testified that the acts occurred when she was between 14 and 21 years old. Because some of the acts occurred when SJ was a minor, and some occurred when SJ was an adult, the acts implicate different rules for admission. Hayman challenges the admissibility of various acts to which SJ testified, both before and after she became an adult.

First, Hayman challenges SJ's testimony about acts that occurred when she was a minor. This includes:

- When SJ was 14 years old, Hayman smirked at her and groped her under a blanket.

- When SJ was 14 years old, Hayman asked her if she ever masturbated.

- When SJ was 14 years old, Hayman encouraged her to take a shower, pushed her down on a bed, told her to be a "good bitch," and raped her.

- When SJ was 14 years old, Hayman took her to a Burger King and had her give him a "blow job" in the bathroom.

- When SJ was 14 years old, Hayman raped her in a "sewer room."

- When SJ was 14 years old, Hayman raped her in an upstairs walkway.

- When SJ was 15 years old, Hayman was very violent, would "hit [her] a lot very hard," and rape her.

- When SJ was 15 years old, Hayman forced her to have sexual intercourse with three of his friends.

- When SJ was 15 years old, Hayman hit and kicked her after she questioned whether his African friend had AIDS, and then allowed this friend to rape her while he watched.

- When SJ was 15 years old, Hayman would bring her to another friend's home and provide her with alcohol and show her pornography.

- When SJ was 15 years old, Hayman hit her "very hard" in the face, dragged her to the bathroom by her hair, and urinated on her for not finding his friend attractive.

- When SJ was 15 years old, Hayman told her she had to "f***" his friend, watched the friend rape her, and told SJ: "See, I told you you would like it."

- When SJ was 15 or 16 years old, Hayman told her he was going to propose to her sister; he then raped SJ inside his apartment.

- When SJ was 15 or 16 years old, Hayman had SJ give him a "blow job" in the bathroom of a Chinese restaurant before having dinner with her sister, to whom Hayman had just proposed.

- When SJ was 16 years old, Hayman viciously beat her and screamed at her for getting a boy's cell phone number at a bowling alley.

- When SJ was 16 years old, after getting the boy's number, Hayman forced and thrust a capped beer bottle into her anus and forced her to perform oral sex on him.

- When SJ was 16 years old, Hayman forced her to have sex with another friend, who he called his "best man."

- When SJ was 17 years old, Hayman wanted her to perform oral sex on him at his wedding to SJ's sister.

Hayman also challenges SJ's testimony about acts that occurred when she was an adult, including:

- When SJ was 18 years old, Hayman forced her to become an exotic dancer.

- When SJ was 19 years old, Hayman raped her in the front seat of the car while her infant son was in the back seat.

- When SJ was 21 years old, Hayman rubbed his penis on her G-string at a strip club, and SJ reported the incident to the police.

- Hayman took SJ's money from stripping, and also "made money" off of her when he forced her to have sexual intercourse with his friends.

Finally, Hayman challenges SJ's testimony about certain acts that do not reference a specific age. This included testimony that he would become violent and call SJ a "whore" and a "slut" if she disobeyed him, and testimony that Hayman would have SJ wear her sister's clothing, including her undergarments.

In addition to SJ's testimony, Patrick Schindler testified for the prosecution about Hayman's conduct with SJ. Schindler had previously pleaded guilty to conspiracy to possess child sexually abusive material (CSAM). He testified that he met Hayman in the late 1980s and met SJ through Hayman. According to Schindler, Hayman asked if he could use Schindler's apartment to have sex with SJ, and Schindler agreed. He also loaned Hayman his camcorder, which, when Hayman returned it, contained a video depicting Hayman and SJ engaging in various penetrative sex acts.

The jury found Hayman guilty of one count of CSC-I. The factual basis for the count of conviction was the video depicting an unidentified man performing cunnilingus on SJ while Hayman recorded the act. The jury acquitted Hayman of the remaining six CSC-I counts premised on the other video.

At sentencing, the trial court assessed OV 7 at 50 points, OV 8 at 15 points, and OV 19 at 10 points. The probation department recommended assessing OV 7 (aggravated physical abuse) at 50 points. Defense counsel argued OV 7 should be assessed at zero points because the conduct underlying Hayman's one CSC-I conviction did not support 50 points for OV 7, asserting that there was no evidence of sadism, torture, or excessive brutality. Defense counsel further argued that the trial court could not consider acquitted conduct from the other video. The prosecution argued that Hayman's conduct constituted torture or sadism because the abuse began when SJ was 14 years old, Hayman subjected a minor to sexual penetration by an adult stranger, and Hayman recorded the act for his own sexual gratification. The prosecution also referenced the acquitted conduct. In assessing 50 points for OV 7, the trial court agreed with the prosecution, reasoning:

> All right, if I look only at the convicted offense, it is oral sex on [sic] an unknown male while the Defendant is taking video of it, and the testimony was that she—that [SJ] was an unwilling participant in that activity, and, and was under age. When I say under age, she was under the age of 18, and that's what the jury had to conclude in order to convict Mr. Hayman of that charge. And under those circumstances, I do find that OV 7 is properly scored at 50.

The probation department recommended assessing OV 8 (victim asportation or captivity) at zero points. At sentencing, however, the prosecution argued OV 8 should be assessed at 15 points on the basis of SJ's testimony that Hayman would pick her up at her home and take her to his or his friend's apartment to engage in sexual acts. The trial court determined there was evidence the video at issue was made at Hayman's apartment, and agreed with the prosecution that OV 8 should be assessed at 15 points.

The probation department lastly recommended assessing OV 19 (interference with the administration of justice) at 15 points. There was evidence that, when SJ was younger, Hayman threatened to hurt her if she disclosed the sexual assaults. Further, at a bond hearing earlier in the case, the prosecution presented evidence, including a recorded jail call, that Hayman conspired with his wife to interfere with SJ's custody of her child in an attempt to intimidate her into not proceeding with this case. Defense counsel argued OV 19 should be assessed at zero points, because there was no evidence Hayman had any involvement regarding the custody of SJ's child being challenged to intimidate her, or that he threatened her. The prosecution argued 10 points was the correct assessment on the basis of Hayman's threat to hurt SJ if she disclosed the sexual assaults, as well as his conspiring with his wife to cause SJ to lose custody of her child as "an intimidation tactic to get her to drop [the] charges." In rejecting Hayman's argument, the trial court concluded:

> All right, I disagree that OV 19 is incorrectly scored. The Defendant's actions before he was arrested and after he was arrested both demonstrate interference with the administration of justice, and to the point where a person who's never been convicted of life [sic] anything in his life with a victim who is

halfway across the country, and was a child when the (indiscernible) the allegations, and an adult now with her own children, even to the point, and through COVID when almost everybody was let out of jail, I did not feel comfortable having Mr. Hayman out in the community where he could reach [SJ].

Hayman now appeals.

## II. SUFFICIENCY OF THE EVIDENCE

Hayman first argues that this Court should vacate his conviction because there was insufficient evidence to support it. We disagree.

We review de novo a challenge to the sufficiency of the evidence. *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015). When ascertaining whether sufficient evidence was presented at trial to support a conviction, this Court must view the evidence in a light most favorable to the prosecution, and determine whether a rational trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt. *People v Miller*, 326 Mich App 719, 735; 929 NW2d 821 (2019). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury's verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

Relevant to this case, "[a] person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person" and the sexual penetration "occurs under circumstances involving the commission of any other felony." MCL 750.520b(1)(c). The statute defines "sexual penetration" as including "cunnilingus," among other sexual acts. See MCL 750.520a(r). The "other felony" in this case was engaging in child sexually abusive activity in violation of MCL 750.145c(2).[2] On appeal, Hayman challenges only the "sexual penetration" element, specifically arguing he was not responsible for the sexual penetration involving the unidentified man performing cunnilingus on SJ in the video. Hayman does not dispute the

---

[2] MCL 750.145c(2) states:

> A person who persuades, induces, entices, coerces, causes, or knowingly allows a child to engage in a child sexually abusive activity for the purpose of producing any child sexually abusive material, or a person who arranges for, produces, makes, or finances, or a person who attempts or prepares or conspires to arrange for, produce, make, or finance any child sexually abusive activity or child sexually abusive material is guilty of a felony, punishable by imprisonment for not more than 20 years, or a fine of not more than $100,000.00, or both, if that person knows, has reason to know, or should reasonably be expected to know that the child is a child or that the child sexually abusive material includes a child or that the depiction constituting the child sexually abusive material appears to include a child, or that person has not taken reasonable precautions to determine the age of the child.

"Child" means an unemancipated "person who is less than 18 years of age." MCL 750.145c(1)(c) and MCL 750.145c(7).

definition of sexual penetration includes acts of penetration accomplished by means other than direct touching by a defendant, but asserts there was no evidence indicating he *caused* the sexual act. We disagree.

SJ's testimony was direct evidence that Hayman forced her to engage in the sex act depicted on the video. She testified that Hayman not only engaged in multiple sexual acts with her while she was a minor, but that he also forced her to engage in sexual acts with other men. SJ identified herself in the video of herself with the unidentified man, which the jury saw. She testified she was a minor at the time, identified Hayman as the one recording the video, and identified Hayman's apartment as the location in the video. Viewed in a light most favorable to the prosecution, SJ's testimony that Hayman would force her to have sexual intercourse with other men, and her testimony describing the contents of the video at issue here was sufficient for a rational jury to find, beyond a reasonable doubt, that Hayman was the one who caused SJ to be penetrated by the unidentified man. While Hayman argues there was no evidence presented on "how the unidentified man came to penetrate" SJ, SJ testified it was Hayman who forced her to have sexual intercourse with other men, and "[t]he testimony of a victim need not be corroborated in prosecutions under sections 520b to 520g." MCL 750.520h. Furthermore, Schindler, who SJ named as someone with whom Hayman forced her to have sexual intercourse, also testified at the trial that he engaged in a sexual act with SJ after Hayman brought her to his apartment. This corroborated SJ's testimony that Hayman would force her to engage in sexual acts with other men, further allowing the jury to reasonably infer it was Hayman who caused SJ to be involved in the sexual penetration act with the unidentified man in the video.

To the extent Hayman's challenge is related to the weight or credibility of SJ's testimony and the video evidence, these were issues for the jury to resolve. See *People v Baskerville*, 333 Mich App 276, 283; 963 NW2d 620 (2020). The jury was free to believe or disbelieve all or any part of SJ's testimony at trial, and to consider the video evidence in light of the issues raised by the defense. This Court will not interfere with the jury's role in determining issues of weight or credibility. *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008). Furthermore, this Court is required to draw all reasonable inferences and make credibility determinations in support of the jury's verdict. *Nowack*, 462 Mich at 400. Under these standards, there was sufficient evidence for the jury to find, beyond a reasonable doubt, that Hayman caused SJ to be sexually penetrated by another person to sustain his CSC-I conviction.

### III. OTHER-ACTS EVIDENCE

Hayman next argues the trial court erred by admitting other-acts evidence about his uncharged sexual and physical assaults on SJ, because, while some of the other-acts evidence is admissible under MCL 768.27a, the prejudicial effect of the other-acts evidence in this case outweighed their probative value, rendering them inadmissible under MRE 403. Additionally, Hayman contends the other-acts evidence for events which occurred after SJ became an adult were not permitted under MCL 768.27a, and should have been excluded under MRE 404(b)(1). Regarding the other-acts evidence of sexual acts against SJ as a minor, we disagree, and conclude they were admissible. Regarding the other-acts evidence of sexual acts against SJ when she was an adult, we agree the evidence was inadmissible, but conclude that their admission was harmless error which did not affect the outcome of the proceeding.

This Court reviews a trial court's decision to admit or exclude evidence for an abuse of discretion. *People v Thorpe*, 504 Mich 230, 251-252; 934 NW2d 693 (2019). "The decision to admit evidence is within the trial court's discretion and will not be disturbed unless that decision falls outside the range of principled outcomes." *Id*. at 252 (quotation marks and citation omitted). "A decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *Id*. "Preliminary questions of law, such as whether a rule of evidence or statute precludes the admission of particular evidence, are reviewed de novo[.]" *People v Bynum*, 496 Mich 610, 623; 852 NW2d 570 (2014).

## A. OTHER-ACTS EVIDENCE UNDER MCL 768.27A

The majority of the other-acts evidence Hayman challenges involve other uncharged sexual acts he committed against SJ when she was a minor. Other-acts evidence of sexual acts with SJ while she was a minor are covered by MCL 768.27a(1), which states:

> Notwithstanding [MCL 768.27], in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant. If the prosecuting attorney intends to offer evidence under this section, the prosecuting attorney shall disclose the evidence to the defendant at least 15 days before the scheduled date of trial or at a later time as allowed by the court for good cause shown, including the statements of witnesses or a summary of the substance of any testimony that is expected to be offered.

MCL 768.27a(1) is a statutory carveout to the Michigan Rules of Evidence. Like MRE 404(b), it permits the prosecution to introduce evidence of a defendant's other bad acts. See MCL 768.27a(1). However, while MRE 404(b) only permits other-acts evidence for nonpropensity purposes, MCL 768.27a(1) allows the admission of other instances of sexual misconduct for any relevant purpose. This is because, as our Supreme Court has noted, "the reasons for enacting MCL 768.27a were . . . to address a substantive concern about the protection of children and the prosecution of persons who perpetrate certain enumerated crimes against children and are more likely than others to reoffend." *People v Watkins*, 491 Mich 450, 476; 818 NW2d 296 (2012). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. "A trial court admits relevant evidence to provide the trier of fact with as much useful information as possible." *People v Cameron*, 291 Mich App 599, 612; 806 NW2d 371 (2011). Our Supreme Court has observed that a defendant's propensity to commit a crime makes it more probable that he committed the charged offense. *Watkins*, 491 Mich at 470.

The admission of evidence under MCL 768.27a is still subject to the requirements of MRE 403, *Watkins*, 491 Mich at 486, which permits the exclusion of evidence if the probative value of the evidence is substantially outweighed by its prejudicial effect, see MRE 403. However, the balancing test for MRE 403 when addressing evidence under MCL 768.27a requires courts to "weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *Watkins*, 491 Mich at 487. "[O]ther-acts evidence admissible under MCL

768.27a may not be excluded under MRE 403 as overly prejudicial merely because it allows a jury to draw a propensity inference." *Watkins*, 491 Mich at 487.

> There are several considerations that may lead a court to exclude such evidence. These considerations include (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. This list of considerations is meant to be illustrative rather than exhaustive. [*Watkins*, 491 Mich at 487 (citations omitted).]

When weighing the probative value of other-acts evidence, courts should consider the extent to which the other-acts evidence supports the victim's credibility and rebuts any defense attack on the victim's credibility. *Id*. at 491-492.

On appeal, Hayman focuses on the sixth *Watkins* factor: "the lack of need for evidence beyond the complainant's and the defendant's testimony." *Id*. at 487.[3] Hayman contends that, unlike other cases, the alleged sexual acts were captured on video, and the videos were shown to the jury. This, Hayman argues, negated the need for additional other-acts evidence. We disagree. While it is true there was no dispute it was SJ engaging in sexual acts with an unidentified man and with Hayman, the circumstances under which those acts occurred, and whether those acts occurred before SJ turned 18 years old, were disputed issues at trial. Critically, Hayman also disputes whether there was evidence that he forced SJ to engage in those acts. The other-acts evidence from other situations in which SJ was still a minor was relevant to assist the jury in understanding the context of the relationship between Hayman and SJ when she was a minor, and was therefore probative of whether the events in the videos at issue occurred when SJ was still a minor, and whether Hayman forced SJ to participate in the recorded acts. Furthermore, the trial court gave the jury a cautionary instruction about the proper, permissible use of the other-acts evidence. Jurors are presumed to follow instructions. *People v Breidenbach*, 489 Mich 1, 13; 798 NW2d 738 (2011). The court's limiting instruction diminished the prejudicial effect of the other-acts evidence when SJ was a minor. Considering the importance of the other-acts evidence in determining SJ's credibility regarding the sexual abuse she suffered from Hayman as a minor, the evidence was properly admitted.

### B. OTHER-ACTS EVIDENCE UNDER MRE 404(B)

Hayman also challenges the other-acts evidence introduced concerning acts which occurred after SJ became an adult. Because this evidence was not subject to MCL 768.27a, admissibility of the evidence depends on MRE 404(b), which states, in relevant part:

---

[3] We nonetheless note that each of the remaining *Watkins* factors weigh in favor of admitting the evidence. Here, SJ described a largely unbroken series of sexual assaults that were of a similar nature to each other and the alleged offenses, involved the same victim (herself), and occurred frequently, without significant interruption, over a period of years.

(b) Other Crimes, Wrongs, or Acts.

(1) Prohibited Uses.  Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) Permitted Uses.  If it is material, the evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, absence of mistake, or lack of accident.  [MRE 404(b)(1) and (2).][4]

Other-acts evidence is admissible under MRE 404(b)(1) if it is (1) offered for a proper purpose, i.e., one other than to prove the defendant's character or propensity to commit the crime; (2) relevant to an issue or fact of consequence at trial, MRE 401; and (3) sufficiently probative to outweigh the danger of unfair prejudice, MRE 403.  *People v Starr*, 457 Mich 490, 496-497; 577 NW2d 673 (1998); *People v VanderVliet*, 444 Mich 52, 55, 63-64, 74-75; 508 NW2d 114 (1993).

The challenged other-acts evidence was not admissible because there was no nonpropensity purpose for its admission.  The probative value of the evidence was extremely low.  The acts had limited bearing on the charged offenses—all of which involved Hayman and others sexually assaulting SJ when she was a minor—because they occurred when she was an adult, and involved substantially different conduct.  Furthermore, there was more than enough evidence of Hayman's sexual abuse against SJ as a minor without the need for evidence of Hayman's acts against her as an adult.  Put simply, by the time it was introduced, this evidence had no viable purpose other than to further denigrate Hayman's character, and invite the jury to conclude he acted in conformity with that character.  However, while we agree these other-acts evidence were improperly admitted, this Court will only reverse a trial court's erroneous decision to admit evidence if, " 'after an examination of the entire cause, it shall affirmatively appear' that it is more probable than not that the error was outcome determinative."  *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999), quoting MCL 769.26.  As previously noted, the jury convicted Hayman of only the CSC-I charge on the basis of the video showing an unidentified man performing cunnilingus on SJ while Hayman recorded the act.  This video was admitted and played for the jury, as were photographs of SJ at various ages for comparison to her age in the video.  SJ testified she was a minor in the video, Hayman was the one recording the act, and that he would force her to engage in sexual acts with other men.  This was further corroborated by Hayman's friend, who also testified he engaged in a sexual act with SJ when Hayman brought her to his home.[5]  The evidence was more than sufficient to justify the jury's findings without the inadmissible other-acts evidence.  Therefore, it does not affirmatively appear more probable than not that any error in admitting the other-acts

---

[4] The Michigan Rules of Evidence were recently amended, effective January 1, 2024.  What was previously MRE 404(b)(1) is now found in MRE 404(b)(1) and (2).

[5] We also note that the jury acquitted Hayman of the other six counts premised on the second video, demonstrating it is not more probable than not that the jury was unduly influenced by the other-acts evidence after SJ turned 18 years old.

evidence from when SJ was an adult was outcome determinative, and, thus, any error in admitting them was harmless, and does not warrant reversal.

## IV. SENTENCING GUIDELINES

Hayman lastly argues the trial court erred in assessing OVs 7, 8, and 19, and these errors require resentencing because they affect the appropriate guidelines range. We disagree.

When reviewing a trial court's scoring decision, the trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*.

### A. OV 7

The trial court correctly scored OV 7. This variable considers aggravated physical abuse. MCL 777.37(1). MCL 777.37(1) requires an assessment of 50 points if a victim was "treated with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." Sadism is defined by the statute as "conduct that subjects a victim to extreme or prolonged pain or humiliation and is inflicted to produce suffering or for the offender's gratification." MCL 777.37(3). In determining whether the conduct was "designed to substantially increase the fear and anxiety a victim suffered[,]" MCL 777.37(1), "we must consider 'whether the defendant engaged in conduct beyond the minimum required to commit the offense' and, if so, 'whether the conduct was intended to make a victim's fear or anxiety greater by a considerable amount.' " *People v Rodriguez*, 327 Mich App 573, 579; 935 NW2d 51 (2019), quoting *Hardy*, 494 Mich at 443-444. Lastly, because the language "during the offense" is used in MCL 777.37(1)(a), the focus of OV 7 is "solely on conduct occurring during the [sentencing] offense." *People v Thompson*, 314 Mich App 703, 711; 887 NW2d 650 (2016).

Hayman argues OV 7 was improperly assessed at 50 points because only conduct which occurred during the sentencing offense could be considered, and nothing in the video of SJ engaging in a sexual act with the unidentified man involved conduct beyond what was necessary to convict Hayman of CSC-I. Hayman further argues there was no evidence of sadism, torture, or excessive brutality in the video. We disagree.

We first disagree with Hayman's argument there was no evidence of sadism in the relevant video. While it is true there was no excessive physical violence in the video which formed the basis for Hayman's CSC-I conviction, the facts underlying the situation were sufficient to find the presence of sadism in Hayman's conduct under the definition provided in OV 7. See MCL 777.37(3) (defining "sadism" as "conduct that subjects a victim to extreme or prolonged pain or humiliation and is inflicted to produce suffering or for the offender's gratification."). SJ was under 18 years old when Hayman produced the video. Her age, coupled with the forced nature of the sexual act, its recording, and Hayman's presence in the room while it occurred, considering his longstanding abusive relationship with SJ, is sufficient evidence that SJ was subjected to "prolonged pain and humiliation" which was designed "for the offender's gratification." MCL 777.37(3).

We are unaware of cases addressing the scoring of OV 7 in this specific fact pattern, but we find persuasive the United States Court of Appeals for the Sixth Circuit's analysis regarding determining whether an image of child pornography is sadistic:

> [A] sentencing court must determine by a preponderance of the evidence that an image or material (1) depicts sexual activity involving a minor and (2) portrays conduct that would cause an objective viewer to believe—without regard to the undepicted circumstances of the sexual encounter—that the pictured activity is inflicting physical pain, emotional suffering, or humiliation on that minor. [*United States v Corp*, 668 F 3d 379, 389-390 (2012).]

While the Sixth Circuit in *Corp* ultimately determined the image in that case was not sadistic, the specific facts of this case, when considered using the above two-pronged analysis, would support a finding that the act in the video was sadistic. The evidence indicated that SJ was as young as 16. Hayman was clearly present during the act, because SJ was able to identify his voice and apartment in the video, and enjoying the conduct, as demonstrated by some of his audible commentary. The act of forcing a 16-year-old to engage in a sexual act with a grown man she does not know while her existing abuser watches and records is reasonably construed by an objective viewer as being humiliating for the minor. Unlike *Corp*, or other CSAM cases, we are not limited to considering just the content of the video. See *Corp*, 668 F 3d at 389-390. We can consider its context. Although we cannot consider Hayman's acquitted conduct, see *People v Beck*, 504 Mich 605, 635-639; 939 NW2d 213 (2019), we can and must consider the uncharged conduct and other-acts evidence. In assessing the sadism (or specifically the humiliation) of this conduct, we must consider that the conduct does not occur in a silo. Rather, the video represents one node in a years-long pattern of Hayman abusing SJ for his gratification. That SJ may not have known at the time she was being recorded is immaterial, the acts in the video were objectively humiliating to SJ.

Hayman also argues the acts in the video were not sadistic because he did not do any more than was required for the commission of the felony, as required by *Rodriguez*, 327 Mich App at 579. We disagree. Hayman was convicted of CSC-I under MCL 750.520b(1)(c), which concerns sexual penetration "under circumstances involving the commission of another felony." As noted, the underlying felony was the production of child sexually abusive material (CSAM), MCL 750.145c(2). MCL 750.145c(2) states, in relevant part:

> A person who persuades, induces, entices, coerces, causes, or knowingly allows a child to engage in a child sexually abusive activity for the purpose of producing any child sexually abusive material, or a person who arranges for, produces, makes, copies, reproduces, or finances, or a person who attempts or prepares or conspires to arrange for, produce, make, copy, reproduce, or finance any child sexually abusive activity or child sexually abusive material for personal, distributional, or other purposes if that person knows, has reason to know, or should reasonably be expected to know that the child is a child or that the child sexually abusive material includes a child or that the depiction constituting the child sexually abusive material appears to include a child, or that person has not taken reasonable precautions to determine the age of the child is guilty of a crime[.]

The minimum requirements to commit the offense for which Hayman was convicted do not involve Hayman's presence in the room or his personal involvement in recording the act. Considering SJ's testimony regarding Hayman's longstanding sexual abuse, Hayman's presence in the room, which was in his own apartment, and SJ's detailed testimony of Hayman's threats and violence used to make her comply with his demands, served to amplify SJ's fear and anxiety considerably. *Rodriguez*, 327 Mich App at 579. The facts of this case support the trial court's decision to assess OV 7 at 50 points.

## B. OV 8

The trial court properly scored OV 8. This variable addresses victim asportation or captivity, MCL 777.38(1), and courts score it at 15 points when "[a] victim was asported to another place of greater danger or to a situation of greater danger[.]" *Id.* The "asportation" element of OV 8 is satisfied "[i]f a victim is carried away or removed 'to another place of greater danger or to a situation of greater danger[.]' " *People v Barrera*, 500 Mich 14, 21; 892 NW2d 789 (2017), quoting MCL 777.38(1)(a). In this case, the evidence revealed Hayman would pick SJ, a minor, up from her family home and transport her to his apartment, or other places, to engage in sexual acts, and the video of the unidentified man engaging in a sexual act with SJ, which was the premise of Hayman's conviction, was made in Hayman's apartment. Therefore, a preponderance of the evidence supports the inference that Hayman moved SJ to his apartment to sexually assault her and record the sexual act, and Hayman's apartment was a location where it was less likely the assault would be discovered, rendering it a "place of greater danger" or a "situation or greater danger." See *People v Chelmicki*, 305 Mich App 58, 70-71; 850 NW2d 612 (2014) ("A victim is asported to a place or situation involving greater danger when moved away from the presence or observation of others."). The trial court therefore did not err by assessing OV 8 at 15 points.

## C. OV 19

The trial court accurately scored OV 19. This variable addresses interference with the administration of justice. A trial court must assess 10 points for OV 19 if "[t]he offender otherwise interfered with or attempted to interfere with the administration of justice." MCL 777.49(c). Interfering with, or attempting to interfere with, the administration of justice is broadly interpreted when assessing OV 19. *People v Barbee*, 470 Mich 283, 286-287; 681 NW2d 348 (2004). Any acts by a defendant which interfere with, or attempt to interfere with, the judicial process or the investigation of a crime by law enforcement may be considered in assessing OV 19, and a trial court may consider a defendant's conduct after the completion of the sentencing offense in assessing OV 19 as well. *People v Smith*, 488 Mich 193, 200; 793 NW2d 666 (2010).

The facts of this case provided a reasonable basis for the trial court to conclude Hayman interfered with the administration of justice, both when he threatened to hurt SJ if she disclosed the sexual assaults, and when, after his arrest, he conspired with his wife to affect SJ's custody of her child to intimidate her into not proceeding with the case. As was discussed at Hayman's sentencing, evidence, including a jail telephone call between Hayman and his wife, was presented during Hayman's bond hearings and revealed his attempts to intimidate SJ in this case. In addition, as part of her victim-impact statement, SJ explained, after Hayman was arrested and jailed, he tried to use the custody of her child against her to intimidate her into dropping the charges, which she almost did because of his actions. SJ also testified at trial that Hayman threatened to kill her if she

disclosed the sexual assaults.  This Court has recognized that a defendant's conduct of engaging in threats or intimation of a victim or witness, or instructing a victim or witness to not reveal or disclose the defendant's conduct, is sufficient to support an assessment of 10 points for OV 19. *People v Hershey*, 303 Mich App 330, 343; 844 NW2d 127 (2013).  This is precisely what Hayman did.  Therefore, the trial court did not err when it assessed 10 points for OV 19.

## V.  CONCLUSION

Because there was sufficient, admissible evidence to support Hayman's conviction, and the trial court did not err by assessing OVs 7, 8, and 19, we affirm Hayman's conviction and sentence.

/s/ Anica Letica
/s/ Noah P. Hood
/s/ Allie Greenleaf Maldonado