*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ALLEN BYRON TURNER,

Defendant-Appellant.

UNPUBLISHED
May 14, 2025
9:21 AM

No. 366284
Wayne Circuit Court
LC No. 22-000721-01-FC

---

Before: N. P. HOOD, P.J., and CAMERON and LETICA, JJ.

PER CURIAM.

Defendant, Allen Byron Turner, appeals by right his jury trial convictions of two counts of assault with a dangerous weapon (felonious assault), MCL 750.82, three counts of carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b, one count of discharging a firearm from a motor vehicle, MCL 750.234a, one count of second-degree child abuse, MCL 750.136b, one count of carrying a concealed weapon (CCW), MCL 750.227, one count of third-degree fleeing and eluding, MCL 257.602a(3)(a), and one count of domestic violence (third offense), MCL 750.81(4). The trial court sentenced Turner, as a second-offense habitual offender, MCL 769.12, to two to six years' imprisonment for each felonious assault conviction, two years' imprisonment for each felony-firearm conviction, 2 to 10 years' imprisonment for discharging a firearm from a motor vehicle, 9 to 20 years' imprisonment for second-degree child abuse, and one to five years' imprisonment for the CCW, third-degree fleeing and eluding, and domestic violence convictions. We affirm.

## I. BACKGROUND

This case arises from Turner's assault of Lindsey Stone and her brother, Duane Stone, at the Villager Inn motel in Inkster, Michigan.[1] Turner and Lindsey share a child, JTS, who was an infant at that time.

---

[1] In the interest of clarity, we refer to Lindsey and Duane Stone by their first names.

At trial, the prosecution presented evidence that Turner, Lindsey, and JTS resided at the Villager Inn motel for roughly five weeks before the assault. There was evidence that their living arrangement violated a Department of Health and Human Services (DHHS) case service plan implemented after JTS tested positive for cocaine at birth. Lindsey was not permitted to visit JTS without supervision from DHHS personnel.

On the night of August 31, 2021, Lindsey asked Duane to pick her up from the motel because she had an argument with Turner. Just after midnight on September 1, 2021, while Lindsey and Turner argued outside of their motel room, Turner pointed a gun at Lindsey's head and told her to get into her vehicle—a Chevy Impala. Lindsey refused and ran through the parking lot to the motel lobby. As she ran, Turner shot at her. Turner then placed an infant car seat in the front passenger seat of the Chevy Impala and drove in the direction that Lindsey ran.

Shortly after Lindsey entered the motel lobby, Duane arrived at the motel parking lot and saw Turner driving toward him in the Chevy Impala. Turner veered toward Duane, forcing him to push himself off of the vehicle's hood as it passed. Turner then drove toward the parking lot exit, stopped the vehicle, and fired multiple shots at Duane through the rear windshield. Duane suffered a resulting graze wound to his leg. After Turner fled the parking lot, he abandoned the Chevy Impala. The police ultimately recovered and processed the Chevy Impala for evidence. They found a handgun and an infant car seat inside the vehicle. They also found shell casings and broken glass inside the car seat.

Inkster Police Department Sergeant Andrea Lebo interviewed Lindsey several hours after the incident. Sergeant Lebo recorded Lindsey's statement, during which Lindsey recounted the incident as previously described. Lindsey stated that JTS was present when the incident occurred and expressed concern for his wellbeing in Turner's care.

Sergeant Lebo interviewed Turner several times in the days following the incident. Turner denied that JTS was present during the incident and offered numerous explanations regarding his whereabouts, including that he was with his sister, Alexis Turner.[2] Sergeant Lebo testified that Alexis turned JTS over to her on September 3, 2021, per instructions from Children's Protective Services.

Defense counsel unsuccessfully opposed the admission of Lindsey's recorded statement under MCL 768.27c on the basis that it lacked sufficient indicia of trustworthiness. Defense counsel also made a verbal motion for leave to call Alexis as a remote trial witness, which the trial court denied. After the presentation of evidence, the jury found Turner guilty, and the trial court sentenced him as previously described. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Turner argues that the prosecution presented insufficient evidence to sustain his second-degree child abuse conviction. We disagree.

---

[2] In the interest of clarity, we refer to Alexis Turner by her first name.

We review de novo insufficient-evidence claims. *People v Lowrey*, 342 Mich App 99, 122; 993 NW2d 62 (2022). When assessing the claim, we review the evidence in the light most favorable to the prosecution. *Id.* This Court must "determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *Id.* (quotation marks and citation omitted). In making this determination, "this Court must defer to the fact-finder's role in determining the weight of the evidence and the credibility of the witnesses." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). Moreover, an appellate court "is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 47 (2000). "Circumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of the crime." *Id.* Because of the difficulty of proving a defendant's knowledge or intent, "minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008).

Under MCL 750.136b(3), a person is guilty of second-degree child abuse under any one of three circumstances:

> (a) The person's omission causes serious physical harm or serious mental harm to a child or if the person's reckless act causes serious physical harm or serious mental harm to a child.

> (b) The person knowingly or intentionally commits an act likely to cause serious physical or mental harm to a child regardless of whether harm results.

> (c) The person knowingly or intentionally commits an act that is cruel to a child regardless of whether harm results. [MCL 750.136b(3).]

The prosecution offered MCL 750.136b(3)(b) as the theory underlying the second-degree child abuse charge. To establish second-degree child abuse under MCL 750.136b(3)(b), the prosecution must prove beyond a reasonable doubt that: (1) the defendant is either the parent of the child or had care, custody, or authority over the child when the abuse allegedly occurred, (2) the defendant knowingly or intentionally committed an act likely to cause serious physical or mental harm to the child, regardless of whether such harm resulted, and (3) the child was under the age of 18 at the time. See MCL 750.136b(3)(b). See also M Crim JI 17.20a.

On appeal, Turner argues that the prosecution presented insufficient evidence that he committed an act likely to cause serious physical or mental harm to JTS because the evidence did not establish beyond a reasonable doubt that JTS was present when the events at issue occurred. Turner does not dispute the other elements of the offense.

The prosecution presented sufficient evidence that JTS was present when the events at issue occurred. Accordingly, the prosecution presented sufficient evidence to sustain Turner's second-degree child abuse conviction. Duane's preliminary examination testimony, admitted at

trial under MRE 804(b)(1),[3] demonstrated that JTS was present for the events at issue. Duane testified that he saw Turner driving the Chevy Impala in the motel parking lot with JTS in the front seat. According to Duane, Turner veered toward him, forcing him to push himself off of the vehicle's hood as it passed. Turner then drove toward the parking lot exit, stopped the vehicle, and fired multiple shots at Duane through the rear windshield.

Additionally, motel surveillance footage admitted at trial indicated that JTS was present for the events at issue. The footage depicted Lindsey exiting the motel room shortly after midnight on September 1, 2021. Turner exited the motel room moments later carrying what appeared to be an infant car seat. Turner set the car seat on the ground, took several steps toward Lindsey, pulled a black object out of his pocket or waistband, and pointed the object at Lindsey's head. As the altercation continued, movement can be seen in the car seat, which remained on the sidewalk several yards away. Turner later returned to the car seat, placed it on the front passenger seat of the Chevy Impala, and drove toward Lindsey. Additional surveillance footage admitted at trial, which captured the same events from a different angle, appeared to depict an infant inside the car seat as Turner approached the Chevy Impala with the car seat in his hand.

Further, Sergeant Lebo testified that on September 1, 2023, Lindsey reported to law enforcement that Turner kidnapped JTS. Sergeant Lebo interviewed Lindsey, and an audio recording of the interview was admitted at trial. During that interview, Lindsey reported that she, Turner, and JTS resided at the motel for the five weeks preceding the altercation and were there on the night of the altercation. Lindsey did not explicitly state that Turner left the motel with JTS; however, she stated that Turner drove off in the Chevy Impala after the altercation. After Sergeant Lebo informed Lindsey that law enforcement recovered the vehicle and Turner had fled, Lindsey expressed concern that Turner did not have any items needed to care for JTS. This evidence, combined with the surveillance footage seemingly depicting an infant in the car seat during the altercation, supports an inference that JTS was present during the events at issue.

Turner argues that Lindsey's statement to Sergeant Lebo and Duane's preliminary examination testimony were insufficient to establish that JTS was present for the events at issue because they "lacked adequate detail and perspective to constitute reliable evidence that the child was present" in light of Turner's assertion that JTS was with Alexis during the altercation. However, "[i]t is the jury's task to weigh the evidence and decide which testimony to believe," and we "will not interfere with the jury's determinations regarding the weight of the evidence and the credibility of the witnesses." *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008) (quotation marks and citation omitted). The jury was permitted to decide what weight, if any, to give the statements and testimony and to find Lindsey and Duane more credible than Turner. And, as a reviewing court, we are required to "make credibility choices in support of the jury verdict." *Nowack*, 462 Mich at 400. The prosecution therefore presented sufficient evidence to establish that JTS was present during the events at issue.

---

[3] Our Supreme Court has since adopted numerous amendments to MRE 804. Citations and references to MRE 804 in this opinion refer to the version in effect at the time of Turner's trial.

### III. EVIDENCE ADMITTED UNDER MCL 768.27c

Turner next argues that the trial court erred by admitting the audio recording of Lindsey's September 1, 2021 statement to Sergeant Lebo under MCL 768.27c because the statement lacked sufficient indicia of trustworthiness. We disagree.

This Court reviews for an abuse of discretion preserved issues pertaining to a trial court's decision to admit evidence but reviews de novo "[p]reliminary questions of law, such as whether a rule of evidence or statute precludes the admission of particular evidence . . . ." *People v Bynum*, 496 Mich 610, 623; 852 NW2d 570 (2014). An abuse of discretion occurs when a trial court's decision falls outside the range of principled outcomes. *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010). Further, "it is an abuse of discretion to admit evidence that is inadmissible as a matter of law." *Bynum*, 496 Mich at 623. This Court reviews a trial court's findings of fact regarding the trustworthiness of a hearsay statement for clear error. *People v Barrera*, 451 Mich 261, 268-269; 547 NW2d 280 (1996). "A factual finding is clearly erroneous if it leaves the Court with a definite and firm conviction that the trial court made a mistake." *People v Moorman*, 331 Mich App 481, 485; 952 NW2d 597 (2020) (quotation marks and citation omitted).

"In general, hearsay—an out-of-court statement offered to prove the truth of the matter asserted—may not be admitted into evidence." *People v Green*, 313 Mich App 526, 531; 884 NW2d 838 (2015), citing MRE 801 and MRE 802.[4] However, MCL 768.27c permits trial courts to admit hearsay statements into evidence if all of the following conditions are met:

> (a) The statement purports to narrate, describe, or explain the infliction of threat or physical injury upon the declarant.
>
> (b) The action in which the evidence is offered under this section is an offense involving domestic violence.
>
> (c) The statement was made at or near the time of the infliction or threat of physical injury. Evidence of a statement made more than 5 years before the filing of the current action or proceeding is inadmissible under this section.
>
> (d) The statement was made under circumstances that would indicate the statement's trustworthiness.
>
> (e) The statement was made to a law enforcement officer. [*People v Meissner*, 294 Mich App 438, 445; 812 NW2d 37 (2011), quoting MCL 768.27c(1)(a)-(e).]

Turner argues that the trial court abused its discretion by admitting Lindsey's September 1, 2021 statement because it was not made under circumstances that would indicate its trustworthiness as

---

[4] Our Supreme Court has since adopted multiple amendments to MRE 801 and MRE 802. Citations and references to MRE 801 and MRE 802 in this opinion refer to the versions in effect at the time of the trial court's evidentiary ruling.

required by MCL 768.27c(1)(d). Turner did not challenge in the trial court, nor does he challenge on appeal, that the requirements set forth in MCL 768.27c(1)(a)-(c) and (1)(e) were met. MCL 768.27c(2) provides a nonexhaustive list of factors trial courts may consider when assessing whether a statement was made under circumstances that would indicate the statement's trustworthiness, including (1) whether the declarant made the statement in contemplation of pending or anticipated litigation in which the declarant was interested, (2) whether the declarant had a bias or a motive to fabricate the statement, and the extent of any bias or motive, and (3) "[w]hether the statement is corroborated by evidence other than statements that are admissible only under this section." *Meissner*, 294 Mich App at 448, quoting MCL 768.27c(2)(c).

The trial court did not abuse its discretion by admitting Lindsey's September 1, 2021 statement to Sergeant Lebo under MCL 768.27c. In concluding that Lindsey's statement was made under circumstances that would indicate its trustworthiness, the trial court found that Lindsey was in police custody when the statement was made, the statement was made to a law enforcement officer, Sergeant Lebo read Lindsey her *Miranda*[5] rights before the statement was made, and Lindsey was upset when narrating the events at issue. These findings are supported by the audio recording of the interview, which demonstrates that Lindsey was crying and upset throughout her statement to Sergeant Lebo. The findings are also supported by Sergeant Lebo's testimony that Lindsey was in police custody when the statement was made, and Sergeant Lebo read Lindsey her *Miranda* rights before Lindsey made the statement. The trial court also considered whether Lindsey had bias or a motive to fabricate the statement and found that Lindsey's motive in making the statement was to find JTS, and no promises of leniency were made to Lindsey during the interview. This finding is supported by the audio recording of the interview and by Sergeant Lebo's testimony that she did not indicate to Lindsey that Lindsey would receive leniency relative to an unrelated felony warrant in exchange for speaking with Sergeant Lebo. The trial court also found that the statement was made under circumstances indicating its trustworthiness because Lindsey made statements that were not favorable to her. Namely, Lindsey explained that although she was only permitted to have supervised visits with JTS, she had been staying with Turner and JTS at the motel for five weeks preceding the incident. Finally, the trial court found that Lindsey's statement was corroborated by ample other evidence, including Duane's testimony and the motel surveillance footage. Duane's preliminary examination testimony and the motel surveillance footage do, indeed, corroborate the version of events supplied by Lindsey during her statement to Sergeant Lebo.

Turner further argues that the trial court clearly erred by finding that the statement was made under circumstances indicating its trustworthiness because Lindsey had a motive to fabricate the allegations: specifically, evidence presented at trial established that there was an "ongoing pending child custody case" involving Lindsey and Turner, and Lindsey was interested in regaining custody or gaining increased visitation with JTS. We disagree. The trial evidence indicated that JTS was temporarily placed with Turner after JTS tested positive for cocaine at birth, and Lindsey was granted supervised visitation at a DHHS office. The fact that JTS was temporarily placed with Turner and Lindsey was only allowed to visit with him under the DHHS's supervision supports the trial court's trustworthiness finding because Lindsey made statements

---

[5] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

that were not favorable to her. Namely, she admitted that she lived with Turner and JTS at the motel when the events at issue occurred.

Turner also argues that Lindsey's statement lacked sufficient indicia of trustworthiness because Lindsey later stated that she was under the influence of drugs and could not say "what state of mind [she] was in . . . when [she] made those statements." We again disagree. Turner presents no authority demonstrating that a declarant's intoxication when making a statement is dispositive of whether the statement was made under circumstances indicating its trustworthiness under MCL 768.27c, nor has he demonstrated that her level of intoxication was such that it undermined the trustworthiness of her statement. Sergeant Lebo testified at the evidentiary hearing that Lindsey reported consuming alcohol before the events at issue took place but did not report using any drugs, and Sergeant Lebo did not observe any signs of intoxication during the interview. In finding that the statement was made under circumstances indicating its trustworthiness, the trial court acknowledged that Lindsey may have drug or mental health problems but concluded that those conditions did not undermine the veracity of her statement. Turner, therefore, has not established that the trial court abused its discretion by admitting Lindsey's September 1, 2021 statement to Sergeant Lebo.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Turner next argues that defense counsel was ineffective by failing to secure Alexis's testimony at trial. We disagree.

To preserve a claim of ineffective assistance of counsel, a defendant must either move the trial court for a new trial or a *Ginther*[6] hearing, *People v Jackson (On Reconsideration)*, 313 Mich App 409, 431; 884 NW2d 297 (2015), or file in this Court a motion for remand for a *Ginther* hearing, *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). Turner did not file a motion in the trial court for a new trial or *Ginther* hearing, nor did he file in this Court a motion to remand for a *Ginther* hearing. This issue is therefore unpreserved.

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v Spaulding*, 332 Mich App 638, 655-656; 957 NW2d 843 (2020) (quotation marks and citation omitted). We de novo constitutional questions of law and reviews findings of fact for clear error. *Id.* at 656. When an ineffective assistance of counsel claim is unpreserved, our review is limited to errors apparent on the record. *Id.*

"Criminal defendants are entitled to the assistance of counsel under both the Michigan and United States Constitutions." *People v Yeager*, 511 Mich 478, 488; 999 NW2d 490 (2023), citing Const 1963, art 1, § 20 and US Const, Am VI. The constitutional right to the assistance of counsel "guarantees the effective assistance of counsel." *Id.* To establish a claim of ineffective assistance of counsel, a defendant "must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Muniz*, 343 Mich App 437, 448; 997 NW2d 325 (2022) (quotation marks and citation omitted). Counsel is presumed effective, and a defendant

---

[6] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

alleging ineffective assistance "bears a heavy burden of proving otherwise." *Id*. (quotation marks and citation omitted). "Decisions regarding whether to call or question witnesses are presumed to be matters of trial strategy." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). We analyze an ineffective-assistance-of-counsel claim premised on the failure to call witnesses "under the same standard as all other claims of ineffective assistance of counsel, i.e., a defendant must show that '(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different.' " *People v Jurewicz*, 506 Mich 914 (2020). A defendant asserting an ineffective assistance of counsel claim bears "the burden of establishing the factual predicate" for the claim. *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014).

Turner waived appellate review of this issue by failing to file with this Court a complete record of the trial proceedings. The April 18, 2023 trial transcript filed on appeal does not contain the proceedings that occurred on the afternoon of that date. Relevant to Turner's ineffective assistance claim, the record demonstrates that, at some point during the afternoon proceedings on April 18, 2023, trial counsel moved to allow Alexis to testify by Zoom, and the trial court denied the motion. The next day, the trial court noted that defense counsel "might want to . . . argue a motion for reconsideration" regarding that motion. Defense counsel declined to do so because "it's a moot point, because . . . unfortunately . . . [she] had not been able to reach . . . [Alexis]." Defendant counsel did not know if [Alexis had] changed her mind, or what the issue [was]."

On August 20, 2024, this Court's Clerk's Office advised Turner's appellate counsel that the April 18, 2023 trial transcript was incomplete and stated that "[a]ny issue raised which requires consideration of [the transcript] *may be deemed waived* unless [the transcript is] provided to this Court within 21 days . . . ." Counsel did not file a complete transcript of the April 18, 2023 proceeding. Because consideration of this issue requires us to determine whether counsel's failure to call Alexis fell below an objective standard of reasonableness, and Turner has failed to furnish a record necessary to determine the circumstances surrounding the calling of this witness, he has waived appellate review of this issue. See *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000) ("As the appellant below, [the] defendant bore the burden of furnishing the reviewing court with a record to verify the factual basis of any argument upon which reversal was predicated."). See also *Reed v Reed*, 265 Mich App 131, 160; 693 NW2d 825 (2005) (holding that the defendant waived her challenge to the admission of evidence by failing to furnish this Court with a record of the trial court's decision). Accordingly, Turner is not entitled to relief on this basis.

We affirm.

/s/ Noah P. Hood
/s/ Thomas C. Cameron
/s/ Anica Letica